IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  07-041 (RJL) |
| | ) | |
| KENNETH KEITT | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR,
IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**

Kenneth Keitt, by and through undersigned counsel and pursuant to Rules 12(b) and 7(c)(1) of the Federal Rules of Criminal Procedure, hereby moves this Court to dismiss the Indictment or, in the alternative and pursuant to Rule 7(f) of the Federal Rules of Criminal Procedure, to direct the Government to file a bill of particulars.

The Indictment should be dismissed because it fails to set forth the required elements of an illegal gratuity under 18 U.S.C. § 201(c). Should the Court disagree, Mr. Keitt seeks a bill of particulars so that, among other things, he may adequately prepare his defense and avoid prejudicial surprise at trial. The particulars sought are set forth below.[1]

1. Identify Person A or confirm that Person A is Wilhelm Dermanassian.[2]

---

[1] References to any allegation or matter in this motion or accompanying memorandum in order to obtain the relief sought or the particulars of the alleged facts or matters do not constitute an admission.

[2] "Identify" when used in reference to a natural person means to state his or her: (1)  full name; (2)  present or last known business and residence addresses and telephone numbers; (3) present or last known official business position; and (4) business affiliation, address and title. "Identify" when used in reference to a business entity means to state its:  (1) full name; (2) present or last known form of organization (*e.g.*, corporation, partnership); and (3) present or last known address of its principal place of business.   "Identify" when used in reference to a *footnote continued on next page . . .*

2. Identify and describe the specific "official acts" for which gratuities were provided.

3. Identify and describe all "decisions" or "actions," as those terms are defined in 18 U.S.C. § 201(a)(3).

4. Identify and describe the dates on which Person A took "official acts" because of or for the item of value described in the Indictment ($6,900).

5. Identify and describe all links (as that term is defined in *United States v. Sun-Diamond Growers of California,* 526 U.S. 398 (1999) and *United States v. Schaffer,* 183 F.3d 833 (D.C. Cir. 1999)) between the item of value described in the Indictment ($6,900) and the "official acts" taken by Person A.

6. Identify and describe Mr. Keitt's conduct in "knowingly" giving the item of value described in the Indictment ($6,900) to Person A.

7. Identify and describe "all official acts performed by Person A relating to the operational support contract…." Indictment, at ¶ 5.

8. Identify and describe all "favorable treatment [given by Person A] in administering and overseeing the contract…." Indictment, at ¶ 5.

9. Identify and describe all "positive input [by Person A] regarding the annual renewal of the contract…." Indictment, at ¶ 5.

---

document means to provide, with respect to it, the following information: (1) the date or approximate date and (2) its title or heading, nature (*e.g.*, letter, telegram, memorandum), substance, and location, with sufficient particularity to enable it to be easily identified by its custodian in response to a subpoena *duces tecum* or a motion to produce. "Describe" means to provide with respect to any act, occurrence, transaction, event, statement, communication or conduct all facts concerning any such act, including but not limited to, a description of each act, the date, the location, and the names and addresses of all persons involved.

10. Identify and describe all "favorable exercise[s] of discretion [by Person A] not to terminate the contract…." Indictment, at ¶ 5.

11. Identify and describe all "consideration [by Person A] of DMJM's proposals, suggestions and solicitations for the provision of emergency traffic services after September 11, 2001. Indictment, at ¶ 5.

12. Identify and describe the duties, responsibilities and authority of Person A as Associate Director in charge of the District of Columbia, Traffic Services Administration.

13. Identify and describe all instances where the Indictment alleges that the item of value was a "loan forgiveness," rather than a payment of $6,900 as set forth in the Indictment.

In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities. Proposed Orders granting the relief sought by Mr. Keitt are attached hereto.

Respectfully submitted,

_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088 (Telephone)
(202) 293-3499 (Facsimile)

Counsel for Kenneth Keitt

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  07-041 (RJL) |
| | ) | |
| KENNETH KEITT | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR,**
**IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**

Defendant Kenneth Keitt, by and through undersigned counsel, respectfully submits the following Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss the Indictment or, in the Alternative, for a Bill of Particulars.

## I. INTRODUCTION

Kenneth Keitt is a 57 year-old native of Washington, D.C.  Since graduation from Howard University in 1977 with a Bachelor of Science degree in civil engineering, Mr. Keitt has spent his entire career in the engineering business.  In 1978, Mr. Keitt began working as a design engineer for urban traffic systems for a predecessor of DMJM+Harris ("DMJM").[1]  With increasing experience over the course of his career, Mr. Keitt assumed responsibility for the design of larger systems including freeways, interstate highways and surveillance systems.

By 2001, Mr. Keitt had earned a promotion to Vice President and Deputy Practice Leader for DMJM's Intelligent Transportation Systems Group.  In this capacity, Mr. Keitt shared

---

[1] DMJM is a leading engineering services, construction and project management firm for the transportation and infrastructure sectors.

1

supervisory responsibility for the Group's nationwide practice, which at the time had active projects in Connecticut, New York, Pennsylvania, Florida and Texas. He also served as Virginia Business Unit Manager. From his office in Fairfax, Virginia, Mr. Keitt oversaw a staff of about 50 people and local projects in Hampton Roads and Fairfax, as well as in the District of Columbia. In this regard Mr. Keitt's responsibilities included general supervision of an "Operational Support Agreement" for District of Columbia Department of Transportation.[2]

According to the Indictment, more than five years ago, during a period between October 2001 until about December 2001, "[Mr.] Keitt gave $6,000 to Person A, for or because of official acts performed or to be performed by Person A relating to the operational support contract, including his favorable treatment in administering and overseeing the contract, his positive input regarding the annual renewal of the contract, his favorable exercise of discretion not to terminate the contract, and his consideration of DMJM's proposals, suggestions and solicitations for the provision of emergency traffic services after September 11, 2001." Indictment, at ¶ 5. It is undersigned counsel's understanding, based on a less than full review of the thousands of pages of documents provided by the Government, that the Chief Contracting Officer for the Department of Public Works (not Person A), provided to DMJM the first annual preliminary notice of intent to extend the Operational Support Agreement for a second year on August 14,

---

[2] On September 15, 2000, the District of Columbia awarded to DMJM the "Operational Support Agreement" to assist the Traffic Signal System Division by operating the city's existing computerized traffic signal system. The contract was awarded for an original one-year term, with annual options, which have been routinely exercised by the District, to renew for a total of five years. The contract included a schedule of annual fees and expenses, which provided approximately $3.5 million in the first year and a total of $12.9 million over five years.

2

2001. The same official routinely confirmed the contract extension on September 26, 2001. These obviously predate the alleged payments. Moreover, counsel understands that no decision or action with respect to DMJM's business relationship with the District of Columbia was taken until more than a year after October 2001.

Despite this, Mr. Keitt is charged with one count of violating 18 U.S.C. § 201(c). This statute prohibits giving "anything of value" to a public official "for or because of any official act performed or to be performed by such public official." 18 U.S.C. § 201(c).[3] Nothing in the Indictment connects the $6,900 payment to any of the alleged "official acts." Because the Indictment does not allege any nexus between the $6,900 payment and the "official acts," it is fatally defective.

## II. ARGUMENT

Rule 12(b) of the Federal Rules of Criminal Procedure allows a party to "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the general issue," including a motion alleging that the Indictment fails to state an offense. Fed. R. Crim. P. 12(b), (b)(3)(B). Rule 7(f) of the Federal Rules of Criminal Procedure permits the

---

[3] On January 19, 2007, the Government advised Mr. Keitt's former attorneys that this is a loan forgiveness case. If so, that is certainly not the charge handed up by the Grand Jury. On May 15, 2007, Government counsel, John Terzaken, Esquire, kindly indicated his willingness to discuss the Government allegations. Undersigned counsel is certainly willing and will seek to pursue this matter informally with the Government. Given undersigned counsel's caseload and court appearances, it would not be possible to resolve these matters before the due date of this motion. Notwithstanding, "it is a settled rule that a bill of particulars cannot save an invalid indictment." *Russell v. United States*, 369 U.S. 749, 770 (1962). That said, undersigned counsel will speak with the Government about its loan forgiveness theory, so the parties may, if possible, avoid unnecessary litigation.

Court to direct the Government to state with particularity the allegations against a defendant so he will be sufficiently informed of the charge which he will have to defend at trial. Fed. R. Crim. P. 7(f). For the reasons set forth below, the Court should dismiss the Indictment in this case. Alternatively, the Court should direct the Government to file a bill or particulars.

### A.     The Indictment Must Be Dismissed For Failure To State An Offense.

"The indictment … shall be a plain, concise and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Court determines the sufficiency of the Indictment by examining it on its face. *United States v. Conlon,* 628 F.2d 150, 155-56 (D.C. Cir.), *cert. denied.*, 454 U.S. 1149 (1982). The Indictment is sufficient if it contains the elements of the offense charged and "fairly inform[s] a defendant of the charge against him and enable[s] him to plead an acquittal or conviction in bar of future prosecutions for the same offense." *Hamling v. United States,* 418 U.S. 87, 117 (1974). Although it is generally sufficient that an Indictment set forth the offense in the words of the statute itself, "[w]here guilt depends … crucially upon … a specific identification of fact, … an indictment must do more than simply repeat the language of a criminal statute." *Id.* at 1118.

To sufficiently plead an illegal gratuity violation under 18 U.S.C. § 201(c), the Government must allege "that the defendant (i) knowingly gave a thing of value; (ii) to a public official or person selected to be a public official; [and] (iii) for or because of any official act performed or to be performed." *United States v. Schaffer*, 183 F.3d 833, 840 (D.C. Cir. 1999).[4]

---

[4] In this case, the Government must also allege and prove that at that time, the public official was an employee of the District of Columbia. 18 U.S.C. § 201(c)(1)(A).

4

The third element requires allegations of a link between a thing of value conferred upon a public official and a specific act for or because of which it was given. *United States v. Sun-Diamond Growers of California,* 526 U.S. 398, 414 (1999). The statutory terms are "pregnant with the requirement that some particular official act be identified and proved." *Id.* at 406.

"[T]he statute's scienter requirement demands more than a gift motivated solely by the recipient's status…." *Schaffer*, 183 F.3d at 840. Giving gifts because of the recipient's mere tenure in office, therefore, does not violate the gratuity statute. *Sun-Diamond,* 526 U.S. at 414. Nor do gifts given to a public official "merely to get cozy or in the hopes of inducing warm feelings toward the giver or the giver's employer" constitute illegal gratuities. *Schaffer,* 183 F.3d at 840; *see also United States v. Williams,* 7 F.Supp.2d 40, 43 (D.D.C. 1998)(not a crime to "give money to a public official openly and with no intent to win anything more than good graces")(citations omitted). Indeed, to amount to an illegal gratuity, the gifts must be "motivated by more than merely the giver's desire to ingratiate himself with the official generally, or to celebrate the latter's status." *United States v. Sun-Diamond,* 138 F.3d 961, 966 (D.C. Cir. 1998)(citations omitted).

The Indictment alleges "favorable treatment," "positive input," "favorable exercise of discretion," and "consideration" of proposals, but that is not enough. The statute requires more. An "official act" requires a "decision" or an "action," not the sort of conduct described in the Indictment. 18 U.S.C. § 201(a)(3); *see also, Valdes v. United States,* 475 F.3d 1319, 1329 (D.C. Cir. 2007)("Because the government failed to show that the payments received by Valdes were for any 'decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official' as

5

required by 18 U.S.C. § 201, the judgment of conviction is reversed."). In addition, Person A did not have the authority to renew the operational support contract. In fact, it is unclear, due to the Indictment's vagueness, whether Person A had the authority to take any "action" or make any "decision" with regarding DMJM's business relationship with the District of Columbia or whether the matters imprecisely alleged in the Indictment were "pending" before Person A. *See* 18 U.S.C. § 201(a)(3).

The Indictment also fails to allege the necessary nexus between the illegal gratuity and "official acts." Because guilt depends on an official act done for or because of a gift given, the Indictment must allege the official act(s) for which the gifts were given. *Hamling,* 418 U.S. at 118. It is impossible to determine from the face of the Indictment for what acts, if any, the things of value were given because the only official acts, as far as counsel discerns, alleged in the Indictment occurred prior to the alleged payments or long after the so-called payments were made.

This Circuit addressed these issues in *Schaffer.* Schaffer was a Tysons Foods executive who was charged with providing presidential inaugural dinner tickets to former USDA secretary Mike Espy in exchange for revisions to two official USDA policies that related directly to a particular E coli outbreak. *Schaffer,* 183 F.3d at 833. This Circuit affirmed the District Court's post-trial judgment of acquittal. Because, like in this case, the gratuity and the official act were temporarily attenuated and it was not proven that Schaffer knew of the USDA's policy revisions affecting Tyson, the Circuit Court found that there was insufficient evidence from which the "jury could infer that Schaffer and Tyson Foods were aware of the USDA's intent to act on the

6

relevant issue at the time of the inaugural dinner." *See Schaffer,* 183 F.2d at 833, 844 n. 11. As such, the Circuit Court concluded:

> In our opinion, the inferential leap across the chasm separating this premise from the requisite conclusion — that the tickets were intended, beyond a reasonable doubt, to induce Espy to propose, take, or shy away from some action on zero tolerance, or alternatively to ensure that Tyson Foods' proposals, suggestions and/or concerns were accorded special scrutiny — cannot be considered reasonable. The breadth of the Supreme Court's *Sun-Diamond* opinion with respect to identifying a *particular* official act must of necessity spill over here, creating the need for a more definitive link than the prosecution provided. To hold otherwise would mean that any time a regulated entity became aware of any inchoate government proposal that could affect its interests, and subsequently provided something of value to a relevant official, it could be held to violate the gratuity statute in the event the inchoate proposal later appeared in a more concretized form. Were the inferential leap from this scenario to an intent to influence considered reasonable, we would in effect revive the status-based reading of the gratuity statute the Court so roundly rejected in *Sun-Diamond.* We balk at any such end run.

*Id*. at 844-845. (emphasis in the original).

If the Indictment alleged that Mr. Keitt knew when the alleged payment of $6,900 was allegedly made that Person A would decide or take action on matters pending before him in his official capacity, the Indictment could withstand more than casual scrutiny. This, however, is not the case. The Indictment fails in this many other respects. First, the Indictment alleges a payment of $6,900. The Government has represented that, in its view, this was a loan, not an illegal gratuity. It only became illegal, according to the Government, once the loan was forgiven. The Indictment, however, does not state this. The Government cannot charge one crime and prove another. Second, the Indictment states that Person A, among other things, gave "favorable treatment" and "positive input." These are not official acts. Even if they were, the Indictment does not link these acts to the $6,900 payment or any loan forgiveness. Third, the Indictment does not allege that Mr. Keitt knew that Person A would take any official acts

7

because of the $6,900 payment or loan forgiveness. Finally, the period of time between the payment or loan forgiveness and any of the acts listed in the Indictment is so great that no reasonable juror could infer from these allegations that Mr. Keitt is guilty beyond a reasonable doubt. Thus, it appears chronologically impossible for any link to exist. For these reasons, the Indictment must be dismissed.

### B. Alternatively, The Government Should File A Bill Of Particulars.

The Indictment in this case fails to provide Mr. Keitt with sufficient information as to the charges against him. Under such circumstances, when the indictment is too vague, a bill of particulars is necessary. *United States v. McDade,* 827 F.Supp. 1153, 1187 (E.D. Pa. 1993)(citations omitted). Thus, if the Court does not grant Mr. Keitt's motion to dismiss the Indictment, the Court should order the Government to file a bill of particulars of the matters alleged in the Indictment.[5]

Rule 7(f) of the Federal Rules of Criminal Procedure empowers the Court to direct the Government to file a bill of particulars. Fed. R. Crim. P. 7(f). The Court has "very broad discretion" in ruling on such requests. *Will v. United States,* 289 U.S. 90, 98-99 (1967). "The proper office of a bill of particulars in criminal cases is to furnish to the defendant further information respecting the charge stated in the indictment when necessary to the preparation of his defense, and to avoid prejudicial surprise at the trial," and when necessary for those purposes,

---

[5]An indictment need not be invalid for vagueness for the court to grant a bill of particulars. Seeking a bill of particulars is the "proper course" even where an indictment is "sufficiently detailed" to "apprise[] the accused of the charge against him so that he can prepare his defense" and "enable[] the accused to plead the Double Jeopardy bar to reprosecution if he is
*footnote continued on next page . . .*

8

it is to be granted even though it requires "the furnishing of information which in other circumstances would not be required because evidentiary in nature," and an accused is entitled to this "as a right." *United States v. United States Gypsum, Co.,* 37 F.Supp. 398, 402 (D.D.C. 1941)(emphasis added); *see also United States v. Butler,* 822 F.2d 1191, 1193 (D.C. Cir. 1987)("A bill of particulars can be used to ensure that the charges brought against a defendant are stated with enough precision to allow the defendant to understand the charges [and] to prepare a defense…."); *United States v. Fletcher,* 74 F.3d 49, 53 (4th Cir. 1996)("The purpose of a bill of particulars is to amplify the indictment by providing missing or additional information so that the defendant can effectively prepare for trial."), *cert. denied,* 519 U.S. 857 (1996).

Rule 7(f) no longer requires a showing of cause before a court may order a bill of particulars. Fed. R. Crim. P. 7(f). The rule is "designed to encourage a more liberal attitude by courts towards bills of particulars without taking away the discretion which courts must have in dealing with such motions in individual case." Notes of Advisory Committee on Rules, 39 F.R.D. 69, 170 (1966). Indeed, defendants must be given the benefit of the doubt in "gray areas." *United States v. Thevis,* 474 F.Supp 117, 124 (N.D. Ga. 1979), *aff'd all other grounds,* 665 F.2d 616 (5th Cir. 1982). "The net result of the change seems to have been to increase the instances in which particulars are granted, thus contributing to a desirable decline in the 'sporting theory' of criminal justice." *United States v. Addonzio,* 451 F.2d 49, 64 (3d Cir. 1971), *cert. denied*, 405 U.S. 1048 (1972); *see also* Advisory Committee Note to Fed. R. Crim. P. 7(f).

---

later charged with the same offense." *United States v. American Waste Fibers Co.*, 809 F.2d 1044, 1046-47 (4th Cir. 1987).

9

Any reluctance by the Government to reveal its case "must yield to paramount public interest in affording the accused a reasonable foundation for mounting a defense." *United States v. Manetti*, 323 F. Supp. 683, 696 (D. Del 1971). Thus, while the justification for particulars in this instance are manifest, any uncertainties as to whether a bill of particulars should be provided in this instance should be resolved in favor of disclosure to Mr. Keitt. *See United States v. Rogers*, 617 F. Supp. 1024, 1028 (D. Colo. 1985) ("If the competing interests of the defense and the Government are closely balanced, the interests of the defendant in disclosure must prevail.").

The Indictment fails to apprise Mr. Keitt of the charges against him because not only does it fail to sufficiently allege official acts for which the alleged money was paid, it fails to allege any nexus between the money and any official acts. *See United States v. Trie,* 21 F.Supp.2d 7, 22 (D.D.C. 1998)(although indictment generally alleged that the defendant received certain benefits, the government was required to more specifically lay out exactly what benefits ran to the defendant as a result of his alleged activity.). Unless Mr. Keitt is provided with the requested information as to the alleged official acts and the link between any official acts and the $6,900, he will be severely prejudiced at trial. *See United States v. Hsia*, 24 F. Supp. 2d 14, 30-32 (D.D.C. 1998)(ordering particulars as to, *inter alia*, unnamed co-conspirators and to how defendant caused alleged false statements to be made)(citations omitted).

Because information about the benefits received as a result of the alleged payment of money is "integral to the case against him," Mr. Keitt is entitled to know basic information about the manner in which the alleged illegal gratuity is alleged to have been carried out, including the dates and the nature of the official acts. *United States v. Turkish,* 458 F.Supp. 874, 883 (S.D.N.Y. 1978)(Government must define vague terms used in the indictment "[i]n light of the

10

need for defendants to be apprised as specifically as possible of the crime with which they are charged."). Such specific information is necessary to provide Mr. Keitt an adequate opportunity to prepare his defense.

In light of the purposes of Rule 7(f), Mr. Keitt's requests are entirely reasonable and should be granted. Although the indictment "has a veneer of precision in that it alleges [a payment amount of $6,900 and refers to a specific contract], this precision evaporates upon closer examination" because the Indictment alleges no link, temporal or otherwise, between the payment and the benefits received. *United States v. Ganim,* 225 F.Supp.2d 145, 155 (D. Conn. 2002). Without some notice of the official acts for which the alleged gifts were given or the nexus between any official acts and the alleged things of value, Mr. Keitt cannot prepare his defense as to the alleged gratuities. *See United States v. Asselin*, 2005 WL 2365326 (D. Mass. Sep 09, 2005)(ordering bill of particulars where indictment did not identify any preferential treatment or rewards received in exchange for the "payment of bribes, kickbacks, gratuities and other things of value). A bill of particulars, therefore, is was warranted.

### III. CONCLUSION

For the foregoing reasons, Mr. Keitt requests the Court to dismiss this criminal action or, in the alternative, to grant his motion for a bill of particulars.

                                      Respectfully submitted,

                                      _____/s/_____
                                      STEVEN J. McCOOL
                                      D.C. Bar No. 429369
                                      MALLON & McCOOL, LLC
                                      1776 K Street, N.W., Suite 200
                                      Washington, D.C. 20006
                                      (202) 393-7088 (Telephone)
                                      (202) 293-3499 (Facsimile)

                                      Counsel for Kenneth Keitt

**CERTIFICATE OF SERVICE**

I hereby certify that on the 16th of May 2007, the foregoing Defendant's Motion to Dismiss the Indictment or, in the Alternative, for a Bill of Particulars, supporting memorandum of law and proposed Orders were served by electronic filing upon:

John Terzaken
Mark Pletcher
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C.  20530


_____/s/_____
Steven J. McCool

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 07-041 (RJL) |
| | ) | |
| **KENNETH KEITT** | ) | |
| | ) | |
| Defendant. | ) | |

### ORDER

Upon consideration of Defendant Keitt's Motion to Dismiss the Indictment, the government's opposition thereto and the entire record in this matter, it is this _____ day of May 2007, hereby

**ORDERED**, that Defendant Keitt's motion is granted, and it is hereby

**FURTHER ORDERED**, that the above-captioned case is hereby dismissed.

_____
THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | Criminal No. 07-041 (RJL) |
| | ) | |
| **KENNETH KEITT** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

Upon consideration of Defendant's Motion for a Bill of Particulars, the government's opposition thereto and the entire record in this matter, it is this _____ day of May 2007, hereby

**ORDERED**, that Defendant Keitt's motion is granted, and it is hereby

**FURTHER ORDERED**, that the Government shall file within 30 days a bill of particulars on the following matters:

1. Identify Person A or confirm that Person A is Wilhelm Dermanassian.

2. Identify and describe the specific "official acts" for which gratuities were provided.

3. Identify and describe all "decisions" or "actions," as those terms are defined in 18 U.S.C. § 201(a)(3).

4. Identify and describe the dates on which Person A took "official acts" because of or for the item of value described in the Indictment ($6,900).

5. Identify and describe all links (as that term is defined in *United States v. Sun-Diamond Growers of California,* 526 U.S. 398 (1999) and *United States v. Schaffer,* 183 F.3d 833 (D.C. Cir. 1999)) between the item of value described in the Indictment ($6,900) and the "official acts" taken by Person A.

1

6. Identify and describe Mr. Keitt's conduct in "knowingly" giving the item of value described in the Indictment ($6,900) to Person A.

7. Identify and describe "all official acts performed by Person A relating to the operational support contract…." Indictment, at ¶ 5.

8. Identify and describe all "favorable treatment [given by Person A] in administering and overseeing the contract…." Indictment, at ¶ 5.

9. Identify and describe all "positive input [by Person A] regarding the annual renewal of the contract…." Indictment, at ¶ 5.

10. Identify and describe all "favorable exercise[s] of discretion [by Person A] not to terminate the contract…." Indictment, at ¶ 5.

11. Identify and describe all "consideration [by Person A] of DMJM's proposals, suggestions and solicitations for the provision of emergency traffic services after September 11, 2001. Indictment, at ¶ 5.

12. Identify and describe the duties, responsibilities and authority of Person A as Associate Director in charge of the District of Columbia, Traffic Services Administration.

13. Identify and describe all instances where the Indictment alleges that item of value was a "loan forgiveness," rather than a payment of $6,900 as set forth in the Indictment.

_____
THE HONORABLE RICHARD J. LEON
UNITED STATES DISTRICT COURT JUDGE