IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Criminal No. 07-041 (RJL) |
| v. ) | |
| ) | |
| KENNETH KEITT, ) | |
| ) | |
| Defendant. ) | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**

On February 23, 2007, the Grand Jury returned a particularized, one-count Indictment of Kenneth Keitt ("defendant") for giving $6900 to a public official, Wilhelm DerMinassian, for or because of official acts performed or to be performed by DerMinassian related to an operational traffic support contract held by defendant's employer DMJM+Harris, Inc. ("DMJM"). Before seeking the Indictment, the United States met with counsel for defendant on three occasions to describe the results of its investigation, its theory of the case, and the supporting evidence. After return of the Indictment, the United States immediately produced all relevant documents to defendant to prepare his defense and met again with counsel for defendant to discuss the Indictment and highlight that evidence which the United States deemed most pertinent. Nonetheless, defendant now attacks the Indictment as fatally defective, or in the alternative, he demands a detailed bill of particulars, claiming an insufficient understanding of the charge. *See* Defendant's Motion to Dismiss or, in the Alternative, for a Bill of Particulars (Document No. 10) (May 16, 2007) ("Motion to Dismiss"). Because the clear and concise language of the Indictment and the particularized discovery already afforded to defendant are sufficient to apprise him fully of the charge against him and to enable him to prepare for trial, the Court should deny defendant's Motion to Dismiss in its entirety.

**I.     STATEMENT OF FACTS**

On February 23, 2007, a Grand Jury empaneled in the District of Columbia charged defendant with one count of providing an illegal gratuity to the former Associate Director of the Traffic Services Administration ("TSA") of the District of Columbia Department of Transportation ("DC DOT"), Wilhelm DerMinassian, who is referred to in the Indictment as Person A, in violation of 18 U.S.C. § 201(c)(1). The Indictment charged that from in or October 2001 until in or about December 2001, defendant gave a $6900 gratuity to DerMinassian for or because of official acts performed or to be performed by DerMinassian related to the operational support contract held by defendant's company, DMJM. The charged official acts included DerMinassian's positive input regarding the annual renewal of that contract, his favorable exercise of discretion not to terminate that contract, and his favorable outlook on and consideration of DMJM's proposals and suggestions for additional DC DOT business, such as the provision of emergency traffic services after September 11, 2001.

In advance of the Grand Jury's indictment of defendant, the United States met with counsel for defendant on three different occasions between October 2006 and January 2007 to discuss the government's investigation, the proposed indictment of defendant, and the theory of and evidence supporting the proposed charge. Since those meetings, the United States' position in this case, as set forth in the Indictment, has remained unchanged.

On January 2 and February 12, 2007, as part of these pre-Indictment discussions, and in direct response to the theory and evidence highlighted by the United States, counsel for defendant submitted two substantial "white papers" hoping to persuade the United States not to seek an indictment of defendant. In these white papers – totaling twenty one, single-spaced pages – defendant marshaled facts and presented legal arguments against the proposed case.

Unswayed by defendant's arguments, the United States pursued an indictment of defendant. The Grand Jury returned its Indictment of defendant on February 23, 2007, and defendant was arraigned by the Court on March 13, 2007.

One week after the arraignment, on March 22, 2007, the United States met with counsel for defendant to discuss the Indictment, the broad discovery the United States would imminently produce, and, to expedite counsel's review of the file, those aspects of the case file the United States deemed most pertinent to the charge.

One week later, exactly two weeks after the arraignment, on March 27, 2007, the United States, produced to defendant <u>all</u> of the discovery in its possession. This included copies of all of the grand jury transcripts, grand jury exhibits, interview memoranda, and electronic data, which the United States copied for defendant at its own expense.

Since then, the United States has had further telephone discussions with counsel for defendant about the theory of the prosecution and evidence supporting the charge.

## II.    DISCUSSION

### A.    THE INDICTMENT CLEARLY AND CONCISELY CHARGES DEFENDANT WITH AN ILLEGAL GRATUITY

An Indictment must be a "plain, concise, and definite written statement of the essential facts constituting the offense charged." Fed. R. Crim. P. 7(c)(1). The Indictment is sufficient if it contains the elements of the offense charged, fairly informs defendant of the charge against which he must defend, and enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. *Hamling v. United States*, 418 U.S. 87, 117 (1974).

The federal gratuity statute makes it unlawful for defendant to "directly or indirectly give, offer, or promise anything of value to any public official . . . for or because of any official act

performed or to be performed by such public official." 18 U.S.C. 201(c)(1)(A). An "official act" is defined as "any decision or action on any . . . matter . . . which may at any time be pending . . . in such official's official capacity." A violation of the gratuity statute, therefore, requires that defendant: (1) knowingly gave a thing of value; (2) to a public official; (3) for or because of any official act performed or to be performed by such public official.

In *United States v. Sun-Diamond Growers*, 526 U.S. 398, 414 (1999), the Supreme Court held that the gratuity statute requires a link between the thing of value conferred upon a public official and the official act "for or because of" which it was given. Gift-giving merely by dint of an individual's official position does not violate the gratuities statute. "It is not a crime to give things of value to a public official merely to get cozy or in the hopes of inducing warm feelings toward the giver or the giver's employer." *United States v. Schaffer*, 183 F.3d 833, 840 (D.C. Cir. 1999) (overruled by presidential pardon). Instead, the Court held, the gratuity statute's insistence upon any official act, carefully defined, seems pregnant with the requirement that some particular official act be identified and proved. *Sun-Diamond,* 526 U.S. at 406.

After *Sun-Diamond*, in a case arising out of the same investigation, the Court of Appeals for the District of Columbia Circuit rightly observed that a gratuity "presumes a situation in which the offender gives the gift without attaching any strings." *Schaffer*, 183 F.3d at 840 (quoting *United States v. Mariano*, 983 F.2d 1150 (1st Cir. 1993)). The court noted that while bribery is entirely future-oriented, gratuities can either look forward or backward. *Id.* In particular, the court identified the three possible variations of a gratuity. A gratuity can be a reward for past action. It can also be intended to entice a public official, who has already staked out a position favorable to the giver to maintain that position. *Id.* (citing *Sun-Diamond*, 526 U.S. at 408). Finally, a gratuity can be given with the intent to induce a public official to propose, take, or shy

away from some future official act. *Id.* at 842. This third category would "additionally encompass gifts given in the hope that, when particular official actions move to the forefront, the public official will listen hard to, and hopefully be swayed by the giver's proposals, suggestions, and/or concerns." *Id.*

In this case, the Indictment sufficiently charges defendant with directly or indirectly giving a thing of value, namely $6900, to a public official, Wilhelm Derminassian, for or because of official acts related to DMJM's operational support contract. The Indictment charges the statutorily required nexus between the $6900 given to DerMinassian and official acts he performed or would perform. As set forth in the Indictment, the money was given "for or because" of those past, present or future official acts related to the operational support contract. With these allegations, defendant is apprised of the crime he is alleged to have committed and the general theory of the government's case. Nothing more is required to sustain the Indictment. Contrary to defendant's suggestion, nothing in the Indictment suggests the money was given solely by dint of DerMinassian's status; rather the Indictment properly alleges the money was given for or because of his plenary responsibility over DMJM's $12.9 million operational support contract and the actions he had or would take in his official capacity.

Defendant also faults the Indictment "because the only official acts, as far as counsel discerns, alleged in the Indictment occurred prior to the alleged payments or long after the so-called payments were made." Motion to Dismiss at 6. As explained in *Schaffer*, however, a gratuity payment can serve as a reward for an official action or as an enticement to take a particular act, and there is certainly no temporal drop dead bar which would insulate gifts given at certain times before or after some official act. In any event, this undue criticism is not one which properly attacks the sufficiency of the Indictment, but rather, is better presented to the jury as

argument that the government did not prove, because of the gift's temporal attenuation to the official act, that the thing of value was given for or because of the official act. *Id.* at 841-42.

Most of defendant's other criticisms of the Indictment are, likewise, better pursued with the trier of fact in pursuit of a rigorous defense.[1]  Whether DerMinassian had the authority to act regarding DMJM's business relationship with DC DOT or whether defendant knew DerMinassian would take such official acts are inquiries that might undermine the government's case at trial, but they are irrelevant to the question of the sufficiency of the Indictment.

Defendant also claims half-heartedly that the Indictment does not charge official acts, as defined by the statute and as understood by *United States v. Valdes*, 475 F.3d 1319 (D.C. Cir. 2007) (en banc) (holding police officer's license plate and warrant queries not official acts). An official act is defined as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may be at any time pending or which may by law be brought before any public official in such official's official capacity." 18 U.S.C. § 201(a)(3). In *Valdes*, the D.C. Circuit added that official acts were those within the "class of questions or matters whose answers or dispositions is determined by the government," 475 F.3d at 1324, for example, should this person receive a contract . . . and for how much?" *Id.* at 1325.

---

[1] Defendant appears to recognize his claims are better suited for closing argument when he suggests that "no reasonable juror could infer . . . that Mr. Keitt is guilty beyond a reasonable doubt." Motion to Dismiss at 8. Whatever limited traction they may have before a jury, defendant's complaints about various disputed factual matters have no relevance in considering the sufficiency of the Indictment. *See, e.g.*, *United States v. Baker*, 262 F. Supp. 657, 681 (D.D.C. 1966) ("In short, all well pleaded facts are taken as true, and if the same constitute a criminal offense, the count is good and must not be dismissed.").

In this case, the Indictment alleges that defendant gave DerMinassian $6900[2] for or because of "official acts. . . relating to the operational support contract."  Given DerMinassian's position as Associate Director of DC DOT and as the primary architect and manager of the operational support contract held by DMJM, those allegations alone meet *Sun-Diamond*'s standard that an official act be particularly identified.  The Indictment, however, provides additional information as to the nature of the official acts under contemplation by DerMinassian.  These official matters pending before DerMinassian included: administering and overseeing the operational support contract; providing input as to the contract's annual renewal; exercising discretion whether to terminate the contract; and considering DMJM's proposals, suggestions, and solicitations for the provision of emergency traffic services after September 11, 2001.  Each one of the alleged official acts falls squarely within *Valdes*'s prescription of a decision or action of the ilk performed by the government.  The official acts alleged in the Indictment do not impermissibly amount to moonlighting or the abstract misuse of District of Columbia resources by DerMinassian, *see, e.g., Valdes*, 475 F.3d at 1324, nor do they constitute merely inchoate government proposals with the potential to affect DMJM, *Schaffer*, 183 F.3d at 844, rather they fall within the heartland of DerMinassian's primary responsibilities as a D.C. public official.  Indeed, all the alleged official acts relate to DMJM's operational support contract and all parallel *Valdes*'s rhetorical acceptance of "should this person receive a contract . . . and for how much" as the type of official questions whose answers the statute easily covers.  *Valdes*, 375 F.3d at 1325.

---

[2]   Defendant also suggests that he is confused by the government's allegation that he "gave [DerMinassian] $6900." Motion to Dismiss at 7.  His argument is, however, muted by his own admission that he has long understood that the government's theory is that he <u>gave</u> DerMinassian the $6900 in the form of loan forgiveness. *Id.* at 3 n.3 ("On January 19, 2007, [pre-Indictment,] the Government advised Mr. Keitt's former attorneys that this is a loan forgiveness case.").

Nonetheless, defendant insists that "'favorable treatment,' 'positive input,' 'favorable exercise of discretion,' and 'consideration of proposals'" are not official acts within the meaning of the statute. Motion to Dismiss at 5. Yet, favorable treatment and the favorable exercise of discretion are synonymous with favorable "decisions." Positive input is, of course, a type of "action" by DerMinassian and consideration of proposals and suggestions parrots *Schaffer*'s formulation of one type of official act which if done by virtue of a gift would run afoul of the gratuity statute. *Schaffer*, 183 F.3d at 842 (analyzing forward-looking gratuities given "in the hope that, when particular official actions move to the forefront, the public official will listen hard to, and hopefully be swayed by the giver's proposals, suggestions, and/or concerns").

As the Indictment in this case clearly and concisely informs defendant of the charges against him, allows him to prepare his defense, and would permit him to plead double jeopardy on retrial, defendant's Motion to Dismiss the Indictment should be denied.

### B.     NO BILL OF PARTICULARS IS REQUIRED

A defendant is not entitled to a bill of particulars as a matter of right. *Wong Tai v. United States*, 273 U.S. 77, 82 (1927). The pertinent inquiry is whether the indictment is written with "sufficient precision so that the defendant understands the charges, can prepare a defense, and can avoid double jeopardy at retrial." *United States v. Pineda*, Cr. No. 02-112-12 (TFH), 2007 U.S. Dist. LEXIS 8635, at *3 (D.D.C. Feb. 7, 2007); *see also United States v. Butler*, 822 F.2d 1191, 1193 (D.C. Cir. 1987); *United States v. Bourdet*, 477 F. Supp. 2d 164, 184 (D.D.C. 2007). Even where an indictment is not sufficiently precise, a bill of particulars is not required if the requested information has already been provided to the defendant in some other form. *Butler*, 822 F.2d at 1193; *accord Bourdet*, 477 F. Supp. 2d at 184; *see Pineda*, 2007 U.S. Dist. LEXIS 8635, at *5.

No bill of particulars is required here because the Indictment clearly and concisely informs

defendant of the charge against him. Indeed, as thoroughly examined above, *see* Section II.A *supra* pp. 3-8, the one-count charge alleges with sufficient particularity the elements of a gratuity offense as set forth in recent Supreme Court and D.C. Circuit precedent:[3]

| **GRATUITY ELEMENTS 18 U.S.C. § 201(c)(1)(A)** | **INDICTMENT ALLEGATIONS** |
|---|---|
| Defendant, otherwise than as provided by law for the proper discharge of official duty, gave a thing of value; | "During the period October 2001 until in or about December 2001, ..., in the District of Columbia and elsewhere, Defendant KEITT, otherwise than as provided for by law for the proper discharge of official duty, directly or indirectly gave, offered, and promised a thing of value. . . ." Indictment, ¶ 4.<br><br>"[T]hat is Defendant KEITT gave [Wilhelm DerMinassian] $6900 . . . ." *Id.* |
| To a public official; | "During the relevant time period, [DerMinassian] was employed as a public official, namely the Associate Director in charge of Traffic Services Administration, a division of the [DC DOT]." *Id.*, ¶ 4. |
| For or because of any official act performed or to be performed by such public official. | "In his capacity as Associate Director, [DerMinassian] was responsible for the administration and oversight of DMJM's operational support contract." *Id.*, ¶ 4.<br><br>"Defendant KEITT gave [DerMinassian] $6900 for or because of official acts performed or to be performed by [DerMinassian] relating to the operational support contract, including his favorable treatment in administering and overseeing the contract, his positive input regarding the annual renewal of the contract, his favorable exercise of discretion not to terminate the contract, and his consideration of DMJM's proposals, suggestions and solicitations for the provision of emergency traffic services after September 11, 2001." *Id.*, ¶ 5. |

---

[3]   18 U.S.C. § 201(c)(1)(A); *Sun-Diamond*, 526 U.S. at 404-05; *Schaffer*, 183 F.3d at 840.

Contrary to defendant's conclusory assertion that the Indictment is "too vague," Motion to Dismiss at 8, the Indictment specifically addresses each element of the charged offense, apprising defendant of facts illustrating to <u>whom</u> he gave the gratuity; <u>what</u> the gratuity was; <u>when</u> it took place; <u>where</u> it was given; and <u>why</u> it was given.

In this regard, the cases cited by defendant as support for his request for a bill of particulars are easily distinguishable, as each contained an obvious failure to plead facts, or involved an express admission by the government that it failed to plead facts, critical to establishing even the basic elements of the respective charged offenses. *See, e.g., United States v. Asselin*, Cr. No. 04-30033 (MAP), 2005 WL 2365326, at *2 (D. Mass. Sept. 9, 2005) (unpublished) (requiring particulars where the defendant was charged with fraudulently generating bid proposals and colluding in preparation of bid proposals and the indictment failed to identify what bids or contracts were actually involved); *United States v. Ganim*, 225 F. Supp. 2d 145, 155 (D. Conn. 2002) (requiring particulars where government admitted at oral argument that the benefits it alleged that the defendant received in exchange for official acts were not necessarily the benefits it would rely upon to convict the defendant of the charged offense at trial); *United States v. Hsia*, 24 F. Supp. 2d 14, 30-32 (D.D.C. 1998) (requiring bill of particulars where acts of co-conspirators were unclear from the face of the indictment and the government admitted at oral argument that the indictment failed to properly articulate the object of the alleged conspiracy); *United States v. Trie*, 21 F. Supp. 2d 7, 22 (D.D.C. 1998) (requiring particulars where the defendant was charged with making false statements, conspiracy, and fraudulently obtaining property, and the indictment failed to identify what statements were false, who the defendant conspired with, and what property the defendant fraudulently obtained); *United States v. Turkish*, 458 F. Supp. 874, 884 (S.D.N.Y. 1978) (requiring particulars where the indictment failed to allege

statutory element of charged conspiracy to defraud and contained confusing terminology). No such flaw exists here.

Even apart from the clear and concise language of the Indictment, no bill of particulars is required because the United States has gone out of its way through discovery to put defendant on notice of the charge and to alert him to the specific evidence underlying the charge. *See Butler*, 822 F.2d at 1193 ("[I]f the indictment is sufficiently specific, or if the requested information is available in some other form, then a bill of particulars is not required."); Moore's Federal Practice § 607.07 (4th ed. 2007) ("[W]hen information requested in a demand for a bill is provided in some other form, no bill of particulars is required."); 1 C. Wright, Federal Practice and Procedure: Criminal § 129 at p. 437 (2d ed. 1982) (same). On March 27, 2007, exactly two weeks after defendant's arraignment, the United States produced or made available to defendant all of the discovery in its possession. To assist defendant expedite and focus his review of the case file, the United States immediately copied and produced to defendant (at its own expense) all of the grand jury transcripts, grand jury exhibits, interview memoranda, and electronic data from the case, and made available for review and copying all the hard-copy documents. As a further gesture, before even producing discovery, the United States met with defendant to review the theory of the case and the discovery he could expect to receive, and, most important, to identify for defendant the critical witness testimony and evidence in the discovery file the United States deemed highly pertinent to the present charge. This critical evidence included: the testimony of Wilhelm DerMinassian, the former District of Columbia official who pled guilty to and went to jail for, among other crimes, accepting the illegal payment from defendant as charged in the Indictment and the testimony of other former DMJM employees, as well as the appendant grand

jury exhibits. Against this backdrop, defendant's argument that he now needs a bill of particulars to understand the charge against him rings hollow.[4]

That defendant has long been on notice of the charge against him is further evidenced by the two substantive "white papers" he prepared and submitted to the United States well in advance of the return of his Indictment. After numerous meetings with the United States before the return of the Indictment, during which defendant was apprised of the prosecution's theory of the proposed charge and relevant evidence supporting the charge, defendant prepared substantial white papers, attempting to persuade the United States to desist in its prosecution. In these white papers, defendant lodged legal arguments and marshaled evidence in his defense. Defendant's ability to defend against the present charge even before the Indictment was returned by the Grand Jury flies in the face of his newly claimed ignorance.

Finally, the civil interrogatory-like nature of defendant's requests makes clear that the true purpose of his bill of particulars is not to acquire an understanding of the charge, but rather, impermissibly to compel the government to "reveal … the precise manner in which it intends to prove its case." *United States v. Coleman*, 940 F. Supp. 15, 19 (D.D.C. 1996); *see Pineda*, 2007 U.S. Dist. LEXIS 8635, at *3; *United States v. Whitehorn*, 710 F. Supp. 803, 821 (D.D.C. 1989) ("It is not a function of a bill of particulars to provide detailed disclosure of the government's

---

[4] Courts have granted bills of particular in cases where the government has provided the defendant with "needle in a haystack" discovery. In such cases, not only was the indictment unclear, but the government's discovery amounted to nothing more than making available for review huge volumes of documents and data. *See, e.g., United States v. Trie*, 21 F. Supp. 2d 7, 21 n.12 (D.D.C. 1998) (noting that in addition to the fact that the indictment was unclear, the government's open file discovery "amount[ed] to making available for inspection at a central location approximately 1.9 million documents."). Unlike those cases, the focused "open file" discovery in the present case was not simply a document dump on defendant. Rather, the United States, while making the entire file available, has specifically copied and provided to defendant the most pertinent portions of the file and even shared with defendant which witnesses and what evidence it deemed most critical to the prosecution.

evidence"), *rev'd on other grounds by United States v. Rosenberg*, 888 F.2d 1406 (D.C. Cir. 1989).  This intent is obvious from defendant's requests, which demand for nearly every allegation in the Indictment that the United States "describe" the specific evidence it intends to rely upon to prove each allegation at trial.  For example, although the Indictment plainly alleges that, as required by statute, defendant committed the gratuity offense "otherwise than as provided by law for the proper discharge of official duty," defendant's requests nonetheless demand that the United States "[i]dentify and describe" the specific evidence it will rely upon to prove defendant's state of mind at trial.  Motion to Dismiss at 2 (Request 6).  As such generalized discovery is not a permissible goal of a bill of particulars, *see Coleman*, 940 F. Supp. at 19; *Whitehorn*, 710 F. Supp. at 821, and as defendant is fully apprised of the charge against him, his request for a bill of particulars should be denied.

   DATED this 22nd day of June, 2007.

                Respectfully submitted,

                 /s/
                MARK W. PLETCHER
                JOHN F. TERZAKEN III (D.C. Bar # 474025)
                Trial Attorneys, Antitrust Division
                U.S. Department of Justice
                1401 H Street, N.W., Suite 3700
                Washington, D.C.  20530
                Telephone: (202) 307-6186 / (202) 307-0719
                Facsimile:   (202) 514-6525
                E-mail:  mark.pletcher@usdoj.gov /
                    john.terzaken@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of June 2007, the foregoing **RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO DISMISS THE INDICTMENT OR, IN THE ALTERNATIVE, FOR A BILL OF PARTICULARS**, was filed electronically and to the best of my knowledge, information and belief, counsel for defendant Kenneth Keitt will be notified through the Electronic Case Filing System.

                                      /s/
                              JOHN F. TERZAKEN III
                              D.C. Bar # 474015
                              Trial Attorney, Antitrust Division
                              U.S. Department of Justice
                              1401 H Street, N.W., Suite 3700
                              Washington, D.C.  20530
                              Telephone:  (202) 307-0719
                              Facsimile:   (202) 514-6525
                              E-mail: john.terzaken@usdoj.gov