**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.  07-041 (RJL) |
| ) | |
| KENNETH KEITT ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S MOTION TO DISMISS THE INDICTMENT
AS BARRED BY THE STATUTE OF LIMITATIONS**

Defendant Kenneth Keitt, by and through undersigned counsel, respectfully moves this Court to dismiss the Indictment on statute of limitations grounds.  Mr. Keitt is charged with one count of violating the federal gratuity statute, 18 U.S.C. § 201(c)(1)(A).  A significant portion of the alleged conduct, even if true, was completed prior to October 9, 2001, the start of the limitations period in this case.  This conduct, therefore, cannot be charged because it is outside the statute of limitations.  In support of this motion, the Court is respectfully referred to the accompanying Memorandum of Points and Authorities.  A proposed Order granting the relief sought by Mr. Keitt is attached hereto.

Respectfully submitted,

_____/s/_____
STEVEN J. McCOOL, Esquire
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Kenneth Keitt

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Criminal No.  07-041 (RJL) |
| ) | |
| KENNETH KEITT ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION TO DISMISS THE INDICTMENT
AS BARRED BY THE STATUTE OF LIMITATIONS**

Defendant Kenneth Keitt, by and through undersigned counsel, respectfully submits the following Memorandum of Points and Authorities in Support of Defendant's Motion to Dismiss the Indictment as Barred by the Statute of Limitations.

## I. Background

By an Indictment handed up by the Grand Jury on February 23, 2007, Kenneth Keitt was charged with a single violation of 18 U.S.C. § 201(c)(1)(A).  Specifically, the Government alleges that:

> During the period October 2001 until in or about December 2001, the exact date being unknown to the Grand Jury, in the District of Columbia and elsewhere, Defendant Keitt, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gave, offered, and promised a thing of value to a public official for or because of an official act performed or to be performed by such public official; that is Defendant Keitt gave Person A $6,900 for or because of official acts performed or to be performed by Person A ….

*Indictment*, at ¶ 5.  Person A has been identified by the Government as Wilhelm Derminassian. On April 21, 2005, Mr. Derminassian pled guilty to an Information in *United States v. Wilhelm Dermanassian*, Criminal Case No. 05-127 (RMC).  Mr. Derminassian's charging document makes clear that the Government did indeed know of the exact dates of the so-called payments. According to this Information, Mr. Derminassian solicited and accepted a payment of $2,500 on

October 2, 2001 and another payment of $4,400 on October 26, 2001.  *See* Exhibit 1 (*Derminassian Information*), at ¶ 6.

Mr. Keitt and the Government agreed to toll the statute of limitations in this matter from October 9, 2006 through January 30, 2007.  *See* Exhibit 2, at ¶ 1 (Tolling Agreement).  Mr. Keitt and the Government later agreed to toll the statute of limitations from October 9, 2006 through February 28, 2007.  *See* Exhibit 3 (Supplemental Tolling Agreement).  Thus, the statute of limitations expired on October 9, 2006 and no conduct occurring prior to October 9, 2001 can be brought in this case.  The Government has attempted to get around the statute of limitations bar by aggregating conduct that allegedly occurred before October 9, 2001 with allegations that purportedly fall within the statute of limitations.  The law prohibits this and, since the Government has combined a barred allegation with what looks to be a timely charge, the entire Indictment must be dismissed.

## II. Argument

The Indictment alleges that Mr. Keitt provided $6,900 to Mr. Dermanassian sometime between October 2001 and December 2001.  The record in this case makes clear that the Government actually alleges two so-called payments, one of which was allegedly made on October 2, 2001.  *See* Exhibit 1.  Since the Government has admitted that this payment, if true, was made prior to the start of the limitations period -- October 9, 2001 -- it must be dismissed.[1]

The statute of limitations for non-capital offenses, like the one charged against Mr. Keitt, is five years.  *See* 18 U.S.C. § 3282(a).  This statute specifically provides that "no person shall be

---

[1] A motion to dismiss on statute of limitations grounds is properly raised pretrial.  *See* Fed. R. Crim. P. 12(b)(Advisory Committee Notes)(The defendant may, at his option, raise defenses and objections which are capable of determination without a trial of the general issue, such as statute of limitations.).

prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." A crime is committed and its statute of limitations begins to run when all of the underlying elements of the charged offense have occurred. *See United States v. Toussie*, 397 U.S. 112, 122-23 (1970); *Pendergast v. United States,* 317 U.S. 412, 418 (1943).

In order to establish a violation of 18 U.S.C. § 201(c)(1)(A), the Government must prove the following elements: "that the defendant (i) knowingly gave a thing of value; (ii) to a public official or person selected to be a public official; [and] (iii) for or because of any official act performed or to be performed." *United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 414 (1999). The elements of an illegal gratuity offense are met once a defendant gives a thing of value to a public official with the requisite intent to influence official action. *Hare v. United States*, 618 F.2d 1085, 1086 (4th Cir. 1980); *see also United States v. Schaffer,* 183 F.3d 833, 843 (D.C. Cir. 1999)("[W]e do not view the question of intent in the Manichean terms of the prosecution and the defense, focusing instead upon the more realistic and probative question of whether the acts in question were substantially, or in large part motivated by the requisite intent to influence the [public official]."). *Cf. United States v. Reitmeyer*, 356 F.3d. 1313, 1317, 1323 (10th Cir. 2004) (Major Fraud Act offense is complete once an act is taken in execution of a proscribed scheme; subsequent acts in furtherance of that scheme will not lengthen the statute of limitations pertinent to that offense); *United States v. Dunn*, 961 F.2d 648, 650 (7th Cir. 1992)(mail fraud limitations period runs from date of mailing); *United States v. Payne*, 978 F.2d 1177, 1178-81 (10th Cir.), *cert. denied*, 508 U.S. 950 (1993)(each false representation of a social security number is a completed offense); *United States v. Musacchio*, 968 F.2d 782, 790 (9th Cir. 1991) (misapplication of bank funds complete when funds leave bank); *United States v. Smith*,

3

740 F.2d 734, 736 (9th Cir. 1984)(submitting false statements to the Government is complete upon submission); *Howard v. United States,* 345 F.2d 126, 128 (1st Cir.), *cert. denied*, 382 U.S. 838 (1965)(Under the anti-kickback statute, 41 U.S.C. § 51 (1964), the crime is "complete upon the acceptance of a bribe regardless of whether or not improper action is thereafter taken."); *and Krogmann v. United States,* 225 F.2d 220, 225 (6th Cir. 1955)(the offense defined by the predecessor to 18 U.S.C. § 201(b) "was complete upon the payment of money to [a United States Air Force officer].").

In *Hare*, the Fourth Circuit directly addressed the application of the five-year statute of limitations to receipt of an illegal gratuity. 618 F.2d at 1086. Hare was indicted in 1979 on a charge that he received an illegal gratuity in 1970. *Id.* The Government argued that Hare continued to receive the benefits of the loan, including a favorable interest rate, liberal payment provisions and no late payment penalties. *Id.* The district court dismissed the indictment and the court of appeals affirmed, reasoning that, under the Government's theory, the term of the loan would determine the statute of limitations. "For example, a twenty-five year loan would permit prosecution under § 201(g) [now § 201(c)] thirty years after the terms of the loan had been fixed and the loan proceeds had been received by the errant public official." *Id.* Such a result, according to the Fourth Circuit, "would be contrary to the Supreme Court's admonition in *Toussie* [*infra*], that federal statutes of limitations should be applied strictly in order to further the congressional policy of favoring repose." *Id.* at 1086-1087.

On April 21, 2005, Mr. Derminassian entered pleas of guilty to charges set forth in an Information (*see* Exhibit 1), where the Government charged, in part, that:

> It was part of the scheme that from approximately October 2001 through October 2002 the Defendant solicited and accepted approximately $20,000 in cash and other items of value from Company A, through Persons A-1 and A-2, in

connection with the Operational Support contract, including:

> **A. on or about October 2, 2001 the Defendant solicited and accepted $2,500 in cash;**
> **B. on or about October 26, 2001 the Defendant solicited and accepted $4,400 in cash;**
> C. on or about April 30, 2002 the Defendant solicited and accepted $300 in cash; and
> D. on or about September 27, 2002 the Defendant solicited and accepted $10,544.99 in vehicle repair services.

*See* Exhibit 1 (*Derminassian Information*), at ¶ 6 (emphasis added).

The Indictment in this case alleges that "[d]uring the period October 2001 until in or about December 2001, the exact date being unknown to the Grand Jury … Defendant Keitt gave Person A $6,900 for or because of official acts performed or to be performed by Person A …." *Indictment*, at ¶ 5. The only reasonable conclusion one can draw after comparing the Derminassian Information to the Indictment in this case is the Government drafted the Indictment as it did to avoid the statute of limitations bar.

In an effort to charge conduct outside of the limitations period, the Government has combined multiple alleged payments -- occurring both before and during the limitations period -- in the Indictment. This cannot be permitted; therefore, the Indictment must be dismissed.

### III. Conclusion

Those offenses allegedly committed prior to October 9, 2001 are barred by the applicable statute of limitations. Since the Government asked the Grand Jury to aggregate two alleged payments in one charge, it cannot now undo this. Accordingly, Mr. Keitt respectfully requests that the Indictment be dismissed.

Respectfully submitted,

_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Kenneth Keitt

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November 2007, the foregoing Motion to Dismiss the Indictment on Statute of Limitations Grounds, the Memorandum of Points and Authorities in support thereof and the attached proposed Order were served by electronic filing upon:

John Terzaken  
Mark Pletcher  
U.S. Department of Justice  
Antitrust Division  
1401 H Street, N.W., Suite 3700  
Washington, D.C. 20530

_____/s/_____  
STEVEN J. McCOOL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | Criminal No.: |
| v. | * | Filed:, |
| **WILHELM DERMINASSIAN** | * | Violations:  18 U.S.C. § 201(c)(1)(B)<br>18 U.S.C. §§ 1343, 1346 |

\*\*\*\*\*\*\*\*

## INFORMATION

The United States of America, acting through its attorneys, charges:

## I.

### Count One (18 U.S.C. §§ 1343, 1346)

#### General Allegations

1. From approximately August 2000 through April 2003 Wilhelm DerMinassian ("Defendant") served as the Associate Director in charge of the Traffic Services Administration, a division of the District of Columbia's Department of Transportation (hereinafter collectively referred to as the "D.C. D.O.T.")

2. At all times relevant to this Information Company A, not named as a defendant herein, provided traffic engineering services to the D.C. D.O.T. under its $12.9 million Operational Support contract.

3. At all times relevant to this Information Person A-1, not named as a defendant herein, was a Project Manager for Company A and was in charge of the day-to-day operations of the Operational Support contract, and Person A-2, not named as a defendant herein, was a Vice-President for Company A with supervisory authority over Person A-1 and the Operational Support contract.



EXHIBIT 1

4.  At all times relevant to this Information the Defendant, in his capacity as the Associate Director of the D.C. D.O.T., was responsible for the administration and oversight of the Operational Support contract.

## The Scheme to Defraud

5.  From approximately October 2001 through April 2003, in the District of Columbia and elsewhere, the Defendant, together with Company A, through Persons A-1 and A-2, did unlawfully and knowingly devise and participate in a scheme and artifice to deprive the District of Columbia and its citizens of their intangible right to his honest services as a public official, and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.

## Overview of the Scheme

6.  It was part of the scheme that from approximately October 2001 through October 2002 the Defendant solicited and accepted approximately $20,000 in cash and other items of value from Company A, through Persons A-1 and A-2, in connection with the Operational Support contract, including:

    A.  on or about October 2, 2001 the Defendant solicited and accepted $2,500 in cash;

    B.  on or about October 26, 2001 the Defendant solicited and accepted $4,400 in cash;

    C.  on or about April 30, 2002 the Defendant solicited and accepted $300 in cash; and

    D.  on or about September 27, 2002 the Defendant solicited and accepted $10,544.99 in vehicle repair services.

7.  It was further part of the scheme that the Defendant concealed his receipt of the cash and other items of value detailed in Paragraph 6 by, among other things, insisting in several instances

on receiving payments in cash.

8. It was further part of the scheme that the Defendant solicited and accepted the cash and other items of value detailed in Paragraph 6 with the intent to be influenced to favor Company A in his oversight and administration of the Operational Support contract, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

9. It was further part of the scheme that from approximately October 2001 through April 2003 the Defendant had an undisclosed and improper conflict of interest in that he failed to report his receipt of the cash and other items of value detailed in Paragraph 6, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

10. It was further part of the scheme that between approximately October 2001 and April 2003 the Defendant, having been influenced by the cash and other items of value detailed in Paragraph 6, took official actions in connection with the Operational Support contract that benefitted the financial interests of Company A, including the recommendation and approval of additional work through non-competitive change orders to the Operational Support contract, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

11. It was further part of the scheme that between approximately October 2001 and April 2003 the Defendant, having been influenced by the receipt of the cash and other items of value detailed in Paragraph 6, and having failed to disclose the conflict of interest arising therefrom, recommended and approved three separate change orders to the Operational Support contract worth a total of $5,655,871.

12. It was further part of the scheme that from approximately October 2001 through April

2003 the Defendant intentionally deceived the District of Columbia and its citizens into believing that his official acts in connection with the Operational Support contract were free from the taint of favoritism, bias, conflict of interest and sell-enrichment, when in fact he did have an undisclosed conflict of interest and had been influenced by his receipt of the cash and other items of value detailed in Paragraph 6.

### Use of the Interstate Wires in Furtherance of the Scheme

13. For the purpose of executing the scheme and artifice to defraud detailed in Paragraph 5, on or about October 22, 2001 the Defendant caused Person A-1, who was in his office in Washington, D.C., to telephone Person A-3, who was in Annapolis, Maryland, which resulted in Person A-3 withdrawing cash from a bank account. $4,400 of which Person A-1 later gave to the Defendant on or about October 26, 2001, such use of the interstate wires being foreseeable to the Defendant.

II.

**Count Two (18 U.S.C. § 201(c)(1)(B))**

General Allegations

1. Paragraph 1 of Count One of this Information is realleged and incorporated by reference as though fully set forth herein.

2. At all times relevant to this Information Company B, not named as a defendant herein, provided traffic engineering services to the D.C. D.O.T. under its $17.5 million Integrated Traffic Management System ("I.T.M.S.") contract.

3. At all times relevant to this Information Persons B-1 and B-2, neither of whom is named as a defendant herein, were principals, officers and owners of Company B with supervisory authority for its performance of the I.T.M.S. contract.

4. At all times relevant to this Information the Defendant, in his capacity as the Associate Director of the D.C. D.O.T., was responsible for the administration and oversight of the I.T.M.S. contract.

Description of the Offense

5. On or about October 18, 2002 the Defendant sought to have Company B, though Person B-2, provide him with an item of personal value, to wit, to pay a $1,348.91 hotel bill on the Defendant's behalf, thus enabling the Defendant to make personal use of, and benefit from, a monetary travel advance previously issued to him by the District of Columbia.

6. On or about October 18, 2002 Company B, through Person B-2 after consultation with Person B-1, paid the Defendant's hotel bill detailed in Paragraph 5.

7. The Defendant's acceptance of the item of personal value detailed in Paragraphs 5 and 6

was not provided for by law for the proper discharge of the Defendant's official duty.

8. The Defendant, a public official, sought and accepted the item of personal value detailed in Paragraphs 5 and 6 for an official act to be performed by the Defendant, to wit, favorable treatment of Company B by the Defendant in his future administration and oversight of the I.T.M.S. contract.

**Jurisdiction and Venue**

The offenses charged in this Infonnation were carried nut in the District of Columbia within the five years preceding the filing of this Information.

IN VIOLATION OF TITLE 18 UNITED STATES CODE, SECTIONS 201, 1343 AND 1346.

DATED: 1/1, 2005

_____
R. HEWITT PATE
Assistant Attorney General

_____
SCOTT D. HAMMOND
Deputy Assistant Attorney General

_____
MARC SIEGEL
Director of Criminal Enforcement

_____
LISA M. PHELAN
Chief, National Criminal
Enforcement Section

Antitrust Division
United States Department of Justice

_____
PETER H. GOLDBERG
Attorney, Antitrust Division
United States Department of Justice
1401 H Street, NW, Suite 3700
Washington, D.C. 20530
Tel: (202) 307-5784

_____
JOHN SCHMOLL
Attorney, Antitrust Division
United States Department of Justice
1401 H Street, NW, Suite 3700
Washington, D.C. 20530
Tel: (202) 307-5780

## TOLLING AGREEMENT

WHEREAS the Antitrust Division of the United States Department of Justice ("the Antitrust Division") is conducting an investigation; and

WHEREAS Kenneth Keitt is an interested party in that investigation; and

WHEREAS the parties to this Tolling Agreement desire to allow additional time for the investigation to be completed, for the parties to consider their respective positions in the matter, and to discuss the proper resolution of the investigation;

NOW THEREFORE the parties hereby agree as follows:

1. As to any federal civil or criminal charge, violation, offense, claim or proceeding for which the statute of limitations would otherwise expire during the period October 9, 2006 through January 30, 2007 (a "Tolled Charge"), the running of the statute of limitations is hereby tolled through and including January 30, 2007. Accordingly, should any Tolled Charge be brought by the Antitrust Division, Kenneth Keitt hereby waives and shall not assert as to any Tolled Charge in any manner the defense of statute of limitations, the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of a Tolled Charge that is based on the failure to commence a Tolled Charge during the period October 9, 2006 through January 30, 2007.

2. Should the Antitrust Division conclude that it should take action against Kenneth Keitt, the Antitrust Division will not commence any proceeding against Kenneth Kcitt prior to January 1, 2007.

3. Except as expressly provided herein, this Tolling Agreement shall not be construed to waive any defense based upon the statute of limitations. the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of the claims or charges that is based on the time within which such action was commenced.

1



4. This Agreement may be renewed or extended by agreement of the Antitrust Division and Kenneth Keitt in writing and may be executed by counsel: if applicable, on behalf of Kenneth Keitt.

IN WITNESS WHEREOF, the parties have hereunto subscribed their names on the dates indicated by their respective signatories.

ANTITRUST DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

By: _____      October 13, 2006
Lisa M. Phelan
Chief, National Criminal Enforcement Section
Antitrust Division
United States Department of Justice


_____      October 12, 2006
KENNETH KEITT                         as of October 9, 2006

JONES DAY

By: _____   October 12, 2006
Peter J. Romatowski                   as of October 9, 2006
Jones Day
51 Louisiana Avenue, N.W.
Washington, D.C. 20001-2113

12/21/2006 10:07 FAX



U.S. Department of Justice

Antitrust Division

*City Center Building*
*1401 H Street, NW*
*Washington, DC 20530*

December 21, 2006

**HAND DELIVERED**

Peter J. Romatowski
Jones Day
51 Louisiana Avenue NW
Washington, D.C. 20001

    Re:    <u>Tolling Agreement b/t the Antitrust Division and Kenneth Keitt</u>

Dear Peter:

    Thank you for your thoughtful presentation during our meeting on December 19, 2006. At the end of your presentation, we discussed extending the expiration date included in paragraph 1 of the Tolling Agreement between the Antitrust Division and Kenneth Keitt dated October, 2006 ("Tolling Agreement"). By this letter, we request that, as permitted by paragraph 4 of the Tolling Agreement, you and Kenneth Keitt agree to amend paragraph 1 of the Tolling Agreement to toll the statute of limitations through and including <u>February 28, 2007</u> ("Amendment").

    This Amendment would modify paragraph 1 of the Tolling Agreement as follows:

    1.    As to any federal civil or criminal charge, violation, offense, claim or proceeding for which the statute of limitations would otherwise expire during the period October 9, 2006 through February 28, 2007 (a "Tolled Charge"), the running of the statute of limitations is hereby tolled through and including February 28, 2001. Accordingly, should any Tolled Charge be brought by the Antitrust Division, Kenneth Keitt hereby waives and shall not assert as to any Tolled Charge in any manner the defense of statute of limitations, the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of a Tolled Charge that is based on the failure to commence a Tolled Charge during the period October 9, 2006 through February 28, 2007.

With the exception of this agreed-upon Amendment, all other provisions in the Tolling Agreement will remain in full force and effect.



EXHIBIT 3

     Please acknowledge your agreement and that of your client to the above-referenced Amendment by executing the signature lines below and returning an <u>original</u>, signed page to me. We have executed this agreement on behalf of the Antitrust Division.

                                                Sincerely yours,

                                                John Terzaken
                                                Trial Attorney
                                                National Criminal Enforcement Section


                              **AGREEMENT TO AMEND TOLLING AGREEMENT**

     I, the undersigned, agree to the above-referenced Amendment to the Tolling Agreement between the Antitrust Division and Kenneth Keitt dated October, 2006.

ANTITRUST DIVISION
U.S. DEPARTMENT OF JUSTICE

By: _____                    12/21/06
     Lisa M. Phelan                                        DATE
     Chief, National Criminal Enforcement Section
     Antitrust Division, U.S. Department of Justice


KENNETH KEITT

_____                        12/21/06
Kenneth Keitt                                               DATE

_____                        12/21/06
Peter J. Romatowski                                 DATE
Jones Day
*Counsel for Kenneth Keitt*