IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Criminal No. 07-041 (RJL)** |
| **v.** ) | |
| ) | |
| **KENNETH KEITT,** ) | |
| ) | |
| **Defendant** ) | |

**RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO DISMISS INDICTMENT ON THE BASIS OF SELECTIVE PROSECUTION**

The United States, by and through undersigned counsel, hereby responds to Defendant Kenneth Keitt's Motion To Dismiss the Indictment on the Basis of Selective Prosecution (Document No. 38) (dated Nov. 8, 2007) ("Motion to Dismiss").  Defendant Kenneth Keitt ("defendant") was indicted because he forgave a loan he had directed his subordinate Mike Travers to extend on his behalf to the Assistant Director of Transportation for the District of Columbia, Wilhelm DerMinassian, for or because of DerMinassian's official acts.  Contrary to defendant's spurious assertion that he "was the only person prosecuted in this case," DerMinassian pled guilty for receiving this money to influence him in official acts, and received a 30-month sentence for his crime. Not only is defendant being prosecuted for conduct reciprocal to that for which DerMinassian pled guilty, but he is being prosecuted for conduct routinely criminally prosecuted.  Defendant is not a political foe, nor was he singled out on the basis of race; instead, following the Standards of Federal Prosecution set forth by the Department of Justice, defendant was charged criminally predicated solely on the evidence.  No fact

suggests anything remotely to the contrary, and thus defendant's scurrilous Motion To Dismiss, ungirded by any good faith factual or legal support, should be denied.

## I.  STATEMENT OF FACTS

On February 23, 2007, a federal grand jury indicted defendant for giving an illegal gratuity to Wilhelm DerMinassian, a public official, for or because of official acts related to the Operational Support Contract held by DMJM+Harris, Inc., which defendant oversaw.  On two separate occasions, after receiving telephone calls from DerMinassian soliciting money, defendant directed his subordinate, Mike Travers, to deliver cash to DerMinassian.  Subsequently, defendant learned from DerMinassian that Travers had been seeking repayment of the money, whereupon defendant told DerMinassian that he owed no repayment, and thereafter instructed Travers not to seek collection from DerMinassian, but rather to submit receipts to the company in order to be repaid.  Considering DerMinassian's past and future official acts related to the Operational Support Contract, particularly those acts related to a spin-off, multimillion dollar emergency support contract spawned by the September 11 attacks, defendant's actions to ensure that Mr. DerMinassian received money which he never had to repay are quintessential illegal conduct.

On April 11, 2005, Mr. DerMinassian pled guilty to, inter alia, defrauding the District of Columbia of his honest services by receiving illegal gratuities from defendant.  DerMinassian's plea of guilty was accepted by the Court and he was

sentenced to 30-months of incarceration.

Discussions with defendant's counsel ensued, wherein he was informed of the nature of the case, the evidence against him, and the United States' intent to indict him. During those meetings, defendant attempted to persuade the United States not to prosecute him. As part of these discussions, defendant's attorneys argued that this prosecution was unwinnable against defendant as a matter of atmospherics and jury appeal. To support this contention, defendant described in detail how he believed a jury in the District of Columbia would respond to the allegations set forth in the Indictment. On January 2, 2007, defendant reiterated these arguments in a 15-page tome that included the following:

> Kenneth Keitt is a 57 year-old native of Washington, D.C. Since graduation from Howard University in 1977 with a Bachelor of Science Degree in civil engineering, Mr. Keitt has spent his entire career in the engineering business. In 1978, Mr. Keitt began working as a design engineer for urban traffic systems for a predecessor of DMJM+Harris. . . . .
>
> In his personal life, Mr. Keitt has been married for 32 years and is the father of two adult daughters. He regularly attends church and previously served on the board of For The Love Of Children, a non-profit that serves underprivileged children and youth. Mr. Keitt had surgery for prostate cancer in January 2000, and despite occasional test scares, he has had no recurrence. Mr. Keitt has also been under the care of neurosurgeons for back problems for the past five years. In 2005, he spent six weeks on crutches, but has delayed elective disc surgery due to the pendency of this investigation. . . . .

The government understood these arguments as to defendant's "physical and financial characteristics" as arguments aimed at jury nullification, and thus following

Indictment of defendant by the grand jury, the United States moved in limine to preclude them. Consistent with Supreme Court and D.C. Circuit precedent, the United States argued in its Motion that defendant was not entitled to present evidence which is irrelevant for any purpose other than to provoke the finder of fact to disregard the facts and the law and to decide the case on the basis of irrelevant and inappropriate factors.

Defendant, in turn, filed twelve pre-trial motions, including the instant Motion To Dismiss.

## II.  DISCUSSION

A defendant bringing a selective prosecution claim carries a very heavy burden because there is a strong presumption that prosecutors are properly discharging their official duties.  *United States v. Armstrong*, 517 U.S. 456, 465 (1996) (articulating standard for evaluating selective prosecution claims); *United States v. Palfrey*, 499 F. Supp. 2d 34, 38-39 (D.D.C. 2007) (following *Armstrong* in rejecting selective prosecution claim by escort services madame); *United States v. Hsia*, 24 F. Supp. 2d 33, 48 (D.D.C. 1998) (discussing rationale behind the presumption of properly exercised prosecutorial discretion).  In order to prevail on a claim of selective prosecution, defendant must demonstrate that the challenged action had a discriminatory effect and that it was motivated by a discriminatory purpose. *Armstrong*, 517 U.S. at 465.  "To establish a discriminatory effect in a race case, the defendant must show that the relevant law . . . was not enforced against similarly situated individuals of a different race." *Id.*;

*United States v. Dixon*, 486 F. Supp. 2d 40, 45 (D.D.C. 2007) (dismissing selective prosecution claim as to traffic stops).  Where, as here, the defendant claims that a facially neutral law has been applied in a racially discriminatory manner, official action will not be held unconstitutional solely because it results in racially disproportionate impact; *Dixon*, 486 F. Supp. 2d at 45, rather it is unconstitutional only if that impact can be traced to a discriminatory purpose.  *Id.* (citing *Wayte v. United States*, 470 U.S. 598, 608 n.10 (1985) (holding a showing of discriminatory intent is necessary when equal protection claim is not based on an overtly discriminatory classification)).  This standard is a demanding one, and the showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims.  *Armstrong*, 517 U.S. at 463-64; *Dixon*, 486 F. Supp. 2d at 45.

Defendant, therefore, must provide something more than mere speculation or personal conclusions based on anecdotal evidence, in order to gain either discovery or an evidentiary hearing on this issue.  *Hsia*, 24 F. Supp. 2d at 49 (rejecting selective prosecution claim where nine out of eleven prosecuted individuals were of Asian decent); *see also United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974) (questioning selective prosecution claim where "[defendant] appears frankly to have embarked on a fishing expedition").

In this case, defendant makes the unfounded accusation that the government has singled him out on the basis of race, yet he has produced not even a scintilla of evidence

of a discriminatory effect or a discriminatory motive on behalf of the government. Not only can defendant not show a discriminatory effect in the general application of the federal gratuities statute, he cannot assert a discriminatory effect even in the application of the federal gratuity statute in this investigation.[1] For the conduct described in the Indictment, two individuals have been charged, the gratuity payor, defendant, and the gratuity recipient, DerMinassian, who are of different races. Indeed, DerMinassian, the individual most similarly situated to defendant, was charged and convicted. This fact alone rends asunder his claim that federal prosecutorial policy has led to any discriminatory effect. While there are others who have not been indicted based on the considerations set forth in *Armstrong*, 517 U.S. at 465 and *Hsia*, 24 F. Supp. 2d at 48-52, including the relative culpability of each individual, the strength of each particular case, and the government's enforcement priorities, that outcome does nothing to support defendant's contention of discriminatory effect in this case.

Citing a pre-*Armstrong* case from the Ninth Circuit, defendant argues meritlessly that he need not show a discriminatory intent because the discriminatory effect is so

---

[1] Defendant never identifies the appropriate sample space by which to evaluate his selective prosecution claim, but implies it should be evaluated as to this investigation only. The case law is not consistent on this point. *Compare Hsia*, 24 F. Supp. 2d at 49 n.16 (defining Campaign Financing Task Force as the relevant prosecutorial entity) and *United States v. Greenwood*, 796 F.2d 49, 52 (4th Cir. 1986) (examining Department of Justice, Public Integrity Section as the relevant entity) *with United States v. Edelin*, 134 F. Supp. 2d 59, 82 (suggesting "all federal capital cases" as the sample space). In this case, defendant's analytical flaccidity has no practical effect, as the examination of each potential sample space yields evidence of neither a discriminatory effect nor a discriminatory purpose.

severe.  Motion To Dismiss at 5 ("Targeting the only African American is alone severe enough discriminatory effect to show discriminatory intent.").  His contention, however, misstates the prevailing Supreme Court precedent.  *Armstrong*, 517 U.S. at 1487; *Dixon*, 486 F. Supp. 2d at 45 (holding official action not unconstitutional solely because of a racially disproportionate impact, rather impact must also be traced to a discriminatory purpose).

Defendant must also make some showing of a discriminatory intent – a showing which he does not and cannot make under these circumstances.  Defendant, at most, claims that the Government is "concerned about race" by citing the Government's Motion To Preclude Evidence and Argument Aimed at Jury Nullification.  Yet it was the defendant who raised the atmospherics and jury appeal of this case, and it was the defendant who argued his physical and financial characteristics were germane to this case.  Now to condemn the United States for moving in limine to preclude such baseless, unconstitutional considerations from infecting the evidence of guilt presented at trial is most perverse and untoward.

Having made no showing as to either element of a selective prosecution claim, defendant's Motion to Dismiss should be denied.  His corollary request for discovery on this topic should similarly be denied, for to grant such a fishing expedition absent any indicia of fish would run afoul of *Armstrong*'s strict prescription that the showing necessary to obtain discovery be a significant barrier to insubstantial claims.  517 U.S.

at 464.

DATED this 21st day of November, 2007.

                                      Respectfully submitted,

                                      _____/s/_____

MARK W. PLETCHER
JOHN F. TERZAKEN III (D.C. Bar # 474025)
EMILY W. ALLEN
Trial Attorneys, Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 3700
Washington, D.C.  20530
Telephone:  (202) 307-0719
Facsimile:   (202) 514-6525
E-mail:  mark.pletcher@usdoj.gov /
        john.terzaken@usdoj.gov /
        emily.allen@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of November 2007, the foregoing RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION TO DISMISS INDICTMENT ON THE BASIS OF SELECTIVE PROSECUTION, was filed electronically and to the best of my knowledge, information and belief, counsel for defendant Kenneth Keitt will be notified through the Electronic Case Filing System.

          /s/
JOHN F. TERZAKEN III
D.C. Bar # 474015
Trial Attorney, Antitrust Division
U.S. Department of Justice
1401 H Street, N.W., Suite 3700
Washington, D.C.  20530
Telephone:  (202) 307-0719
Facsimile:   (202) 514-6525
E-mail: john.terzaken@usdoj.gov