IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  07-041 (RJL) |
| | ) | |
| KENNETH KEITT | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MOTIONS *IN LIMINE* TO LIMIT IMPEACHMENT OF WITNESSES USING INVESTIGATIVE REPORTS AND TO PRECLUDE JURY NULLIFICATION ARGUMENTS**

Defendant Kenneth Keitt, by and through his undersigned counsel, respectfully submits the following in response to the government's motions *in limine* to limit impeachment of witnesses using investigative reports and to preclude jury nullification arguments.

**A.  Investigative Reports May Serve as a Reasonable Basis For Cross-Examination.**

The government moves *in limine* to prohibit Mr. Keitt from cross-examining prosecution witnesses with law enforcement reports.  Granting such a broad request pre-trial would amount to an abuse of discretion.[1]  Therefore, this motion must be denied.

The government claims that "[b]ecause the investigative reports disclosed to defendant are not "statements" of the prosecution witnesses [under the Jencks Act], defendant should be precluded from cross-examining those witnesses about the substance of the reports."  Document No. 23, at 2-3.  The government reads the Jencks Act far too narrowly.  Furthermore, the government fails to recognize that, even if these reports do not contain Jencks Acts statements, they can still serve as a reasonable basis for cross-examination.

---

[1] Denial of the right of effective cross-examination is "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it."  *Davis v. Alaska*, 415 U.S. 308, 318 (1974).

The Jencks Act is codified at 18 U.S.C. § 3500. Under section 3500(e), law enforcement reports constitute statutory "statements" if they are a "substantially verbatim" account of the witness interview. *United States v. North American Reporting, Inc.*, 740 F.2d 50, 56 (D.C. Cir. 1984). "Notes that 'evidence substantial selection of material, or which were prepared after the interview without the aid of complete notes' do not meet this standard. On the other hand, this standard does not require that the notes reflect a 'delusive exactness.'" *Id.* (quoting *Palmero v. United States*, 360 U.S. 343, 352-53 (1959). "So long as the notes can be fairly characterized as the witness' own words, they should be made available to the defense." *Id.* (citing *Palermo*, 360 U.S. at 352).

This Court, not the prosecutor, decides whether the reports or portions thereof, fall within the Jencks Act. In *Campbell v. United States*, 365 U.S. 85, 81 (1961), the Supreme Court unanimously concluded that the trial judge was obliged to conduct some inquiry into the circumstances of the witness' interview. *See also United States v. Harrison*, 524 F.2d 421, 428 (D.C.Cir.1975). This Court's inquiry "may involve the interrogation of the witness or of the government agent, or an *in camera* examination of what is purported to be a statement under the [Jencks Act]." *Saunders v. United States*, 316 F.2d 346, 349 (D.C.Cir.1963). Such an inquiry here most likely will reveal that the reports in questions were prepared with the aid of the interview notes. Moreover, we are confident the Court would find that the reports in question reflect the witnesses' own words and not "an infusion of the [agent's] opinions or impressions." *Palermo*, 360 U.S. at 352.

In its motion, the government also fails to recognize that are at least four rules, statutory or court-made, relating to the duty of the prosecution to produce evidence for the defense. First, as discussed above, the Jencks Act requires that "statements" of witnesses be produced for the

defense after a witness has testified on direct examination.  Second, under Rule 26.2 of the Federal Rules of Criminal Procedure, the government and the defense must produce statements (as defined in the rule) after a witness, other than the defendant, has testified on direct examination.  Third, under *Brady v. Maryland*, 373 U.S. 83, 87 (1963), the government, upon request, is required to produce "favorable to an accused" that is "material to either guilt for to punishment…."  A fourth rule requires the production of specified documents by the prosecution when the defense has initiated the discovery proceedings permitted in Rule 16 of the Federal Rules of Criminal Procedure.

These four approaches to the discovery of evidence are separate, distinct, and not necessarily related in any way to each other.  *See United States v. Oruche*, 484 F.3d 590, 597 (D.C. Cir. 2007) ("The Jencks Act imposes obligations on the government that are distinct from the government's *Brady* obligations, but they may overlap to some extent.").[2]  While the first and second rules create a duty to produce evidence only during a legal proceeding, *Brady* and Rule 16 may compel discovery pretrial.

The right to cross-examine as to prior inconsistent statements is not necessarily related to the Jencks Act.  A prior inconsistent statement may be written or oral.  There is no requirement that the prior inconsistent statement be verbatim or adopted by the witness.  In fact, the witness is not required to be confronted with the statement prior to impeachment.  *See* F.R.E. 613 ("In examining a witness concerning a prior statement made by the witness, whether written or not, the statement need not be shown nor its contents disclosed to the witness at that time, but on request the same shall be shown or disclosed to opposing counsel.").

---

[2]The government's reliance on *Oruche* is misplaced.  There, the court of appeals found the trial judge did not abuse his discretion in denying production of rough notes because they were not statements under the Jencks Act <u>and</u> "[the] notes would not have enabled the defense to undermine [the witness'] credibility.  *Id.* at 598-99.

An endorsement of the government's position would represent a departure from well-settled caselaw in this circuit. In *Harrison,* the court of appeals held that the rough notes of FBI interviews of prospective witnesses fall within the category of potentially discoverable materials required to be preserved and possibly produced by the government. 524 F.2d at 434. This holding reinforced the ruling of *United States v. Bryant*, 439 F.2d 642 (1971), wherein the court of appeals imposed a duty on the government to establish systematic procedures to preserve all discoverable evidence gathered in the course of a criminal investigation. *Id*. at 429. In addition to recognizing that rough notes may constitute Jencks Act statements, the *Harrison* court emphasized that Rule 16 of the Federal Rules of Criminal Procedure and *Brady* provide independent foundations requiring the preservation of evidence. *Id.* ("No matter what the Jencks Act was meant to require of prosecutors and investigators, *Brady* and Rule 16 remain as important foundations for a duty to preserve material which is subject to possible later disclosure."). Finally, the *Harrison* court recognized the value of investigative reports and rough notes in cross-examining witnesses.

> Without the notes, which, of course, would be the be evidence, [the defendant] is reduced to trying to show a discrepancy in the 302 report by cross-examining the witness who was the subject of the interview, a witness who was prepared for testifying, not by reading the rough notes, but by using the 302 report. There could hardly be a less auspicious setting for eliciting testimony that will cast doubt on the accuracy of the interview report. Cross-examining the agent will be no more helpful. If there was an honest mistake in preparing the 302 report, one that escaped the agent when he rechecked the report, it is most unlikely that he will suddenly recall the error on the stand. If any discrepancy was the result of misunderstanding or deliberate action, the agent plainly is the most unlikely source of that information.

*Id.* at 432.

The prosecutors protest that "[a]s a result of voluntary disclosures, the government should not now be put in a worse position than if it had never tendered the information…."

4

Document No. 23, at 3-4. If the witnesses testify consistently, then the investigative reports will be of no use to the defense, and the government will not be put in a worse position. On the other hand, if the witnesses provide inconsistent testimony, then the government would be required to produce these investigative reports as well as any rough notes under *Brady*. *See United States v. Pelullo,* 105 F.3d 117, 123 (3d Cir. 1997)(conviction reversed on collateral attack because material exculpatory information appearing in FBI agent's rough notes but not in FBI 302 report not disclosed); *United States v. Anderson,* 36 F.Supp.2d 1264, 1269 (Kan. 1996)("Variance between rough notes and 302's, even as to material which is duplicative, is proper grist for impeachment for bias."). Therefore, the government's motion must be denied.[3]

### B. Evidence About the Government's Charging Decisions May Be Relevant.

The government argues that Mr. Keitt should not be allowed to present evidence or argue to the jury that that he should be acquitted because of: (1) the possible punishment if he is convicted; (2) his physical characteristics (presumably the fact he is African-American) and

---

[3]The government's effort to find support in *United States v. Williams,* 962 F.2d 1216 (6th Cir. 1992) also falls short. The parenthetical quotation following the government's citation of that case actually comes from *Palermo*. In *Palermo,* the Supreme Court held that an agent's brief summary of approximately 600 words, of a conference with a government witness lasting three and one-half hours was not a Jencks Act statement. In that context, the Supreme Court held that "summaries of an oral statement which evidence substantial selection of material … are not to be produced under the Jencks Act." *Id.* at 352-53. The *Palermo* court did not address whether these "summaries" contained exculpatory evidence and the Supreme Court did not reach *Brady* until four years later. The *Williams* court did point out that notes in question in that case did not contain *Brady* evidence. 962 F.2d at 1224-25.

The government also misreads the *dicta* it cites from *United States v. Leonardi*, 623 F.2d 746, 757 (2nd Cir. 1980) which, in any event, has no binding authority in this case. In that case, the trial judge denied Leonardi's effort to introduce a FBI memorandum as extrinsic evidence of an impeachment by omission because it "did not purport to memorialize all of the witness' statements." *Id.* The government fails to mention in its motion *in limine* that the FBI memorandum was provided to the defendant at or before trial. Of course, at the trial of this case, it will be for this Court to determine if any statements provided by the government can be admitted pursuant to Rule 613(b) of the Federal Rules of Evidence.

5

financial characteristics; and (3) the government's charging decisions relating to Mr. Keitt's former employer and its employees. Document No. 22, at 1. On its face, this motion appears to be uncontroversial for the most part.[4] That said, information about the lack of charges against other witnesses may be relevant for purposes wholly apart from the government's concern about jury nullification.

The government's motion *in limine* requesting exclusion of evidence of whether Mr. Keitt's former employer (DMJM) or any other DMJM officer or employee has or has not been charged with any crime is vague and ambiguous. The government fails to identify any specific individual, let alone explain why evidence of the government's decision not to charge the company or any other employee would amount to jury nullification.

The government's motion also does not take fully take into account Mr. Keitt's right to explore the credibility and bias of witnesses. The government admits that "information relating to its discussions with prospective witnesses, for example, an agreement to provide immunity, is relevant on the issue of the witness' motivation." Document No. 22 at 9, n.1. However, bias and credibility are not limited to situations involving an immunity agreement. In situations where a witness faced potential criminal liability, the government's decision not to bring charges is relevant. Such information goes to the potential bias of a witness, which is always relevant. *See United States v. Leonard*, 494 F.2d 955, 963 (D.C. Cir. 1974) ("The permissible scope of exploration on cross-examination is not curtailed by the absence of explicit government promises of leniency, for the defense may attempt to show government conduct which might have led a witness to believe that his prospects for lenient treatment by the government depended on the degree of his cooperation.") (citations and quotations omitted).

---

[4] Undersigned counsel refers to the Court to Mr. Keitt's Motion to Dismiss on the Basis of Selective Prosecution.

Furthermore, the government's cited case law is wholly inapplicable to its request for exclusion of this type of evidence. In *United States v. Young*, 20 F.3d 758 (7th Cir. 1994), the issue had nothing to do with whether a defendant can introduce evidence of whether a witness called at trial had been charged. In *Young*, the motion *in limine* to exclude evidence of whether another person who was arrested for the same crime was subsequently charged dealt with a witness who was not called by the government or by the defendant. *Id*. at 765. The Young court specifically acknowledged that Young had the right to call the non-charged person as a witness in his defense -- a factor which the court determined weighed against any prejudice from the motion *in limine*. *Id*.

Here, certain trial witnesses who provided testimony before a grand jury or statements to the government may have feared and may somehow continue to fear criminal prosecution. It would be entirely appropriate for Mr. Keitt to introduce evidence of the government's decisions not to charge such witnesses or their friends, spouses or colleagues to support arguments about the witnesses' motives and the biases lurking in their testimony.

At this point in the case, before any witness has testified, it is premature to conclude that any reference at trial to the government's decisions not to charge other individuals would be irrelevant or unduly prejudicial. It is hard to see how introducing this kind of basic evidence and argument will unfairly prejudice the government. But if it threatens to do so during the trial, appropriate jury instructions offer a suitable cure.

For the reasons given in this response, Mr. Keitt respectfully requests that the Court deny the government's motions *in limine*.

Respectfully submitted,

_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Kenneth Keitt

**CERTIFICATE OF SERVICE**

  I hereby certify that on the 23rd day of November 2007, Mr. Keitt's response to the government's motions *in limine* to limit impeachment of witnesses using investigative reports and to preclude jury nullification was served by electronic filing upon:

John Terzaken
Mark Pletcher
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C.  20530

              _____/s/_____
              Steven J. McCool