**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **Criminal No.  07-041 (RJL)** |
| | ) | |
| **KENNETH KEITT** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSES**
**TO HIS MOTIONS TO DISMISS THE INDICTMENT ON STATUTE OF**
**LIMITATIONS GROUNDS AND FOR DUPLICITY**

Defendant Kenneth Keitt, by and through his undersigned counsel, respectfully submits

the following reply to the government's responses to his motions to dismiss the indictment as

barred by the statute of limitations and on duplicity grounds.

## I.  Introduction

It is quickly apparent after reading the government's responses to Mr. Keitt's motions for

dismissal on statute of limitations grounds and for duplicity that there is no legal reason for this

case to go to trial.  The prosecutors seek to save the fatally flawed indictment in this case by

repeating over-and-over that they advised Mr. Keitt's attorneys that they believe this as a "loan

forgiveness" case.  It is irrelevant what the prosecutors said outside of the grand jury room.  The

indictment makes clear that the grand jury did not charge Mr. Keitt with forgiving loans.  The

pertinent part of the indictment states:

> During the period October 2001 until in or about December 2001, the exact date
> being unknown to the Grand Jury, in the District of Columbia and elsewhere,
> Defendant Keitt, otherwise than as provided by law for the proper discharge of
> official duty, directly or indirectly gave, offered, and promised a thing of value to
> a public official for or because of an official act performed or to be performed by
> such public official; that is Defendant Keitt gave Person A $6,900 for or because
> of official acts performed or to be performed by Person A relating to the
> operational support contract, including his favorable treatment in administering
> and overseeing the contract, his positive input regarding the annual renewal of the

1

> contract, his favorable exercise of discretion not to terminate the contract, and his consideration of DMJM's proposal, suggestions and solicitations for the provision of emergency traffic services after September 11, 2001.

*Indictment*, at ¶ 5.  In short, the indictment in this case does not even come close to alleging the government's so-called "loan forgiveness" theory.  As a result, this Court has no other choice but to dismiss this case.

## II.  The Government's Theory of Liability Is Irrelevant to Mr. Keitt's Limitations Claim.

The prosecutors repeatedly complain that they informed Mr. Keitt that they believe he is criminally liable in this matter based on a loan forgiveness theory.  Document No. 40, at 1, 2, 5, 6 and 7.[1]  This is irrelevant.  There is nothing in the text of the indictment about loan forgiveness.  Moreover, the tolling agreements mention nothing about any forbearance theory.  Therefore, because the conduct charged in the indictment falls outside the limitations period, this case must end now.

In their response to Mr. Keitt's motion to dismiss for duplicity, the government cited a case -- *United States v. Bucheit,* 134 Fed. Appx. 842 (6th Cir. 2005) -- that is particularly applicable here.  Document No. 41, at 5.  In that case, Bucheit was charged with, among other things, providing an illegal gratuity.  *Id.* at 845.  The illegal gratuity charge was based on Bucheit's agreement not to collect on a debt owed to him by Congressman James Traficant.  *Id.* at 852.  The illegal gratuity count in that indictment specifically alleged that:

> [f]rom in or about April, 1993 and continuing until on or about August 15, 2000, … for and because of official acts relating to [Bucheit's] business affairs in Saudi Arabia during the period 1990-93 and Gaza during the period 1994 to the date of this indictment, **[Bucheit] allowed Congressman Traficant not to pay for**

---

[1] The government goes further and states that Mr. Keitt does not contest his illegal conduct in forgiving a debt owed by the government official referred to in the indictment. Document No. 40, at 4-5.  This is false.  Mr. Keitt has consistently proclaimed his innocence in this matter.

> **substantial carpentry and electrical work which [Bucheit] had caused to be done at Congressman Traficant's farm, took no collection action against Congressman Traficant, and did not charge him any interest.**"

*Id.* (emphasis added). Bucheit was convicted at trial. On appeal, he argued that the illegal gratuity charge was barred by the statute of limitations because "the offense was complete the moment the gratuity was given and/or accepted with the requisite intent..." to influence Traficant. *Id.* at 853. In rejecting this argument, the Sixth Circuit, citing *United States v. Hare,* 618 F.2d 1085 (4th Cir. 1980), said, "this would be a good argument if the indictment alleged [Bucheit] provided services to Traficant with no intention of ever collecting on the bill for that work and the Government was arguing the statute of limitations was tolled every day Traficant enjoyed the benefit of that work without having to make a payment or accrue any interest." *Id.* at 853. In other words, the text of the indictment controls and, because the language in the *Bucheit* indictment alleged that Bucheit forgave a debt, his statute of limitations challenge failed. This language or anything approaching it, is missing from the indictment here. Therefore, the government cannot rebut Mr. Keitt's limitations argument.

   A comparison of the charging documents from *Bucheit* and this case makes this point clear.

| Bucheit Indictment | Keitt Indictment |
|---|---|
| **[Bucheit] allowed Congressman Traficant not to pay** for substantial carpentry and electrical work which [Bucheit] had caused to be done at Congressman Traficant's farm, **took no collection action** against Congressman Traficant, and did not charge him any interest.<br><br>*Bucheit,* 134 Fed. Appx. at 852 (emphasis added). | **Defendant Keitt gave Person A** $6,900 for or because of official acts performed or to be performed by Person A relating to the operational support contract…<br><br>*Indictment,* at ¶ 5 (emphasis added). |

This side-by-side comparison shows that the indictment in this case does **not** allege that Mr. Keitt forgave anything. Bucheit, on the other hand, was specifically charged with forgiving Traficant's debt.

The Sixth Circuit emphasized that if the official acts taken by Traficant during the limitations were done for gratuities provided outside the limitations period, "then there would likely be a problem." *Id.* Here, the government recommended that the grand jury charge a crime for conduct extending back to October 1, 2001, so there is a problem -- a fatal one. No matter how many times the prosecutors attempt to raise a smoke screen by making false bad faith allegations, they cannot cover up this problem.

The indictment charges that "…Defendant Keitt gave Person A $6,900 for or because of official acts…." *Indictment*, at ¶ 5. The prosecutors do not dispute that Person A pled guilty to receiving **two** separate payments – one in the amount of $2,500 on October 2, 2001 and another in the amount of $4,400 on October 26, 2001. *See* Exhibit 1 (*Dermanassian Information*), at ¶ 6. The statute of limitations in this case bars any charge occurring before October 9, 2001. In drafting this indictment, the government aggregated these payments into one offense. By doing so, they brought an indictment that is time barred.

The government's unsupportable claim that the indictment is somehow valid because Mr. Keitt breached the tolling agreements is beyond feeble. The October 9, 2006 Tolling Agreement states in pertinent part:

> As to any federal civil or criminal charge, violation, offense, claim or proceeding for which the statute of limitations would otherwise expire during the period of **October 9, 2006** through January 30, 2007 (a "Tolled Charge"), the running of the statute of limitations is hereby tolled through and including January 30, 2007.

*See* Exhibit 2, at ¶ 1 (Tolling Agreement)(emphasis added). That agreement further provided that "[e]xcept as expressly provided herein, this Tolling Agreement shall **not** be construed to

4

waive any defense based upon the statute of limitations . . ." Exhibit 2, at ¶ 3(emphasis added).[2] The agreements make clear that Mr. Keitt preserved his objection to a charge based on any conduct occurring before October 9, 2001. Therefore, despite unfortunate and repeated allegations to the contrary, this motion is made in good faith, and it is unshakeable.

Mr. Keitt understands the government's theory in this case. Unfortunately, whether this theory was communicated to Mr. Keitt through his counsel is of no moment. It is certainly not a basis to question this counsel's integrity. The grand jury did not charge Mr. Keitt with forgiving loans at some point after the second payment on October 26, 2001. Rather, the indictment alleges that "[d]uring the period October 2001 until in or about December 2001 … Keitt gave person A $6900…." *Indictment,* at ¶ 5. It is as simple as that. The Court cannot ignore this fact and allow this case to continue.

**III.  The Indictment Provides Inadequate Notice And Invites A Non-Unanimous Verdict.**

In its response to Mr. Keitt's motion to dismiss the indictment as duplicitous, the government advances many of the same of arguments cited above. They are equally unpersuasive here.

The prosecutors again complain that they have told Mr. Keitt's lawyers that their theory of liability is "loan forgiveness." Document No. 41, at 2, 4, 5 and 6. This, again, is irrelevant. The text of the indictment determines whether a defendant has received adequate notice. *United States v. Russell*, 369 U.S. 749, 763-64 (1962). Fair notice is essential in criminal prosecutions:

---

[2]Mr. Keitt and the Government later agreed to toll the statute of limitations from October 9, 2006 through February 28, 2007. *See* Exhibit 3 (Supplemental Tolling Agreement). These agreements speak for themselves. Despite the prosecutors' apparent desire to rewrite history, there is nothing in either of those agreements about charges relating to "forgiving DerMinassian's $6,900 debt." Document No. 40, at 6. Notwithstanding, undersigned counsel has spoken with Mr. Keitt's former counsel about the statute of limitations issue. Former counsel fully supports this motion, and he has no concerns about the arguments raised herein.

> No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by the charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*Cole v. Arkansas*, 333 U.S. 196 (1948); *see also Jackson v. Virginia*, 443 U.S. 307, 314 (1979) ("[A]conviction upon a charge not made … constitutes a denial of due process."); *In re Oliver*, 333 U.S. 257, 273 (1948) ("A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense … are basic in our system of jurisprudence."). The government cites no case for the proposition that telephone calls, letters and meetings are sufficient to meet the notice requirements of the Fifth and Sixth Amendments.

The government also claims that any duplicity problem can be remedied with a special unanimity instruction. Document No. 41, at 6-7. Again, the prosecutors miss the mark. We again repeat that the indictment charges that "…Defendant Keitt gave Person A $6,900 for or because of official acts…." *Indictment*, at ¶ 5. The government cannot deny that Person A pled guilty to receiving **two** separate payments – one in the amount of $2,500 on October 2, 2001 and another in the amount of $4,400 on October 26, 2001. *See* Exhibit 1 (*Dermanassian Information*), at ¶ 6. Given this, Mr. Keitt may be convicted because two jurors think he is guilty of making the October 2, 2001 payment, four jurors may think he is guilty of the October 26, 2001 payment and six jurors may think he is guilty of something he is not even charged with – loan forbearance. No appropriate instruction can cure this prejudice. After an indictment is brought, it cannot be "broadened through an amendment except by the grand jury itself." *Stirone v. United States,* 361 U.S. 212, 215-16 (1960). The prosecutors cannot separate out the two payments that the grand jury charged as one. And, they surely cannot amend the indictment to insert an allegation – loan forgiveness – that the grand jury did not charge. Therefore, the indictment must be dismissed as fatally duplicitous.

For the reasons given in this reply and those given in the memorandum in support of defendant's motions to dismiss for duplicity and on statute of limitations grounds, Mr. Keitt respectfully requests that the Court dismiss the indictment in this case.

Respectfully submitted,


_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Kenneth Keitt

## CERTIFICATE OF SERVICE

I hereby certify that on the 3rd day of December 2007, Defendant's Reply to Government's Responses to Defendant's Motions to Dismiss the Indictment for Duplicity and on Statute of Limitations Grounds was served by electronic filing upon:

John Terzaken
Mark Pletcher
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C.  20530


_____/s/_____
Steven J. McCool

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **Criminal No.:** |
| | * | |
| **v.** | * | **Filed:,** |
| | * | |
| **WILHELM DERMINASSIAN** | * | **Violations:**   18 U.S.C. § 201(c)(1)(B) |
| | * | 18 U.S.C. §§ 1343,1346 |
| | * | |
| | \*\*\*\*\*\*\*\* | |

**INFORMATION**

The United States of America, acting through its attorneys, charges:

**I.**

**Count One (18 U.S.C. §§ 1343,1346)**

<u>General Allegations</u>

1.  From approximately August 2000 through April 2003 Wilhelm DerMinassian

("Defendant") served as the Associate Director in charge of the Traffic Services Administration,

a division of the District of Columbia's Department of Transportation (hereinafter collectively

referred to as the "D.C. D.O.T.")

2.  At all times relevant to this Information Company A, not named as a defendant herein,

provided traffic engineering services to the D.C. D.O.T. under its $12.9 million  Operational

Support contract.

**3.**  At all times relevant to this Information Person A-1, not named as a defendant herein,

was a Project Manager for Company A and was in charge of the day-to-day operations of the

Operational Support contract, and Person A-2, not named as a defendant herein, was a Vice-

President for Company A with supervisory authority over Person A-1 and the Operational

Support contract.



4.      At all times relevant to this Information the Defendant, in his capacity as the Associate

Director of the D.C. D.O.T., was responsible for the administration and oversight of the

Operational Support contract.

The Scheme to Defraud

5.      From approximately October 2001 through April 2003, in the District of Columbia and

elsewhere, the Defendant, together with Company A, through Persons A-1 and A-2, did

unlawfully and knowingly devise and participate in a scheme and artifice to deprive the District of

Columbia and its citizens of their intangible right to his honest services as a public official, and to

have those services performed free from deceit, favoritism, bias, conflict of interest and self-

enrichment.

Overview of the Scheme

6.      It was part of the scheine that from approximately October 2001 through October 2002 the

Defendant solicited and accepted approximately $20,000 in cash and other items of value from

Company A, through Persons A-1 and A-2, in connection with the Operational Support contract,

including:

     A.      on or about October 2, 2001 the Defendant solicited and accepted $2,500 in cash;

     B.      on or about October 26, 2001 the Defendant solicited and accepted $4,400 in cash;

     C.      on or about April 30, 2002 the Defendant solicited and accepted $300 in cash; and

     D.      on or about September 27, 2002 the Defendant solicited and accepted $10,544.99

     in vehicle repair services.

7.      It was further part of the scheme that the Defendant concealed his receipt of the cash and

other items of value detailed in Paragraph 6 by, among other things, insisting in several instances

on receiving payments in cash.

8.      It was further part of the scheme that the Defendant solicited and accepted the cash and other items of value detailed in Paragraph 6 with the intent to be influenced to favor Company A in his oversight and administration of the Operational Support contract, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

9.      It was further part of the scheme that from approximately October 2001 through April 2003 the Defendant had an undisclosed and improper conflict of interest in that he failed to report his receipt of the cash and other items of value detailed in Paragraph 6, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

10.      It was further part of the scheme that between approximately October 2001 and April 2003 the Defendant, having been influenced by the cash and other items of value detailed in Paragraph 6, took official actions in connection with the Operational Support contract that benefitted the financial interests of Company A, including the recommendation and approval of additional work through non-competitive change orders to the Operational Support contract, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

11.      It was further part of the scheme that between approximately October 2001 and April 2003 the Defendant, having been influenced by the receipt of the cash and other items of value detailed in Paragraph 6, and having failed to disclose the conflict of interest arising therefrom, recommended and approved three separate change orders to the Operational Support contract worth a total of $5,655,871.

12.      It was further part of the scheme that from approximately October 2001 through April

2003 the Defendant intentionally deceived the District of Columbia and its citizens into believing that his official acts in connection with the Operational Support contract were free from the taint of favoritism, bias, conflict of interest and sell-enrichment, when in fact he did have an undisclosed conflict of interest and had been influenced by his receipt of the cash and other items of value detailed in Paragraph 6.

Use of the Interstate Wires in Furtherance of the Scheme

13.    For the purpose of executing the scheme and artifice to defraud detailed in Paragraph 5, on or about October 22, 2001 the Defendant caused Person A-1, who was in his office in Washington, D.C., to telephone Person A-3, who was in Annapolis, Maryland, which resulted in Person A-3 withdrawing cash from a bank account. $4,400 of which Person A-1 later gave to the Defendant on or about October 26, 2001, such use of the interstate wires being foreseeable to the Defendant.

## II.

### Count Two (18 U.S.C. § 201(c)(1)(B))

<u>General Allegations</u>

1.      Paragraph 1 of Count One of this Information is realleged and incorporated by reference as though fully set forth herein.

2.      At all times relevant to this Information Company B, not named as a defendant herein, provided traffic engineering services to the D.C. D.O.T. under its $17.5 million Integrated Traffic Management System ("I.T.M.S.") contract.

3.      At all times relevant to this Information Persons B-1 and B-2, neither of whom is named as a defendant herein, were principals, officers and owners of Company B with supervisory authority for its performance of the I.T.M.S. contract.

4.      At all times relevant to this Information the Defendant, in his capacity as the Associate Director of the D.C. D.O.T., was responsible for the administration and oversight of the I.T.M.S. contract.

<u>Description of the Offense</u>

5.      On or about October 18, 2002 the Defendant sought to have Company B, though Person B-2, provide him with an item of personal value, to wit, to pay a $1,348.91 hotel bill on the Defendant's behalf, thus enabling the Defendant to make personal use of, and benefit fi-om, a monetary travel advance previously issued to him by the District of Columbia.

6.      On or about October 18, 2002 Company B, through Person B-2 after consultation with Person B-1, paid the Defendant's hotel bill detailed in Paragraph 5.

7.      The Defendant's acceptance of the item of personal value detailed in Paragraphs 5 and 6

was not provided for by law for the proper discharge of the Defendant's official duty.

8.      The Defendant, a public official, sought and accepted the item of personal value detailed in Paragraphs 5 and 6 for an official act to be performed by the Defendant, to wit, favorable treatment of Company B by the Defendant in his future administration and oversight of the I.T.M.S. contract.

**Jurisdiction and Venue**

The offenses charged in this Information were carried nut in the District of Columbia within the five years preceding the filing of this Information.

IN VIOLATION OF TITLE 18 UNITED STATES CODE, SECTIONS 201, 1343 AND 1346.

DATED: _____ 11, 2005

R. HEWITT PATE
Assistant Attorney General

SCOTT D. HAMMOND
Deputy Assistant Attorney General

MARC SIEGEL
Director of Criminal Enforcement

LISA M. PHELAN
Chief, National Criminal
Enforcement Section

Antitrust Division
United States Department of Justice

PETER H. GOLDBERG
Attorney, Antitrust Division
United States Department of Justice
1401 H Street, NW, Suite 3700
Washington, D.C. 20530
Tel: (202) 307-5784

JOHN SCHMOLL
Attorney, Antitrust Division
United States Department of Justice
1401 H Street, NW, Suite 3700
Washington, D.C. 20530
Tel: (202) 307-5780

## TOLLING AGREEMENT

WHEREAS the Antitrust Division of the United States Department of Justice ("the Antitrust Division") is conducting an investigation; and

WHEREAS Kenneth Keitt is an interested party in that investigation; and

WHEREAS the parties to this Tolling Agreement desire to allow additional time for the investigation to be completed, for the parties to consider their respective positions in the matter, and to discuss the proper resolution of the investigation;

NOW THEREFORE the parties hereby agree as follows:

1.    As to any federal civil or criminal charge, violation, offense, claim or proceeding for which the statute of limitations would otherwise expire during the period October 9, 2006 through January 30, 2007 (a "Tolled Charge"), the running of the statute of limitations is hereby tolled through and including January 30, 2007. Accordingly, should any Tolled Charge be brought by the Antitrust Division, Kenneth Keitt hereby waives and shall not assert as to any Tolled Charge in any manner the defense of statute of limitations, the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of a Tolled Charge that is based on the failure to commence a Tolled Charge during the period October 9, 2006 through January 30, 2007.

2.    Should the Antitrust Division conclude that it should take action against Kenneth Keitt, the Antitrust Division will not commence any proceeding against Kenneth Keitt prior to January 1, 2007.

3.    Except as expressly provided herein, this Tolling Agreement shall not be construed to waive any defense based upon the statute of limitations. the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of the claims or charges that is based on the time within which such action was commenced.

1

EXHIBIT

2

4.    This Agreement may be renewed or extended by agreement of the Antitrust Division and Kenneth Keitt in writing and may be executed by counsel: if applicable, on behalf of Kenneth Keitt.

IN WITNESS WHEREOF. the parties have hereunto subscribed their names on the dates indicated by their respective signatories.

ANTITRUST DIVISION
UNITED STATES DEPARTMENT OF JUSTICE

By: _____        October 13, 2006
    Lisa M. Phelan
    Chief, National Criminal Enforcement Section
    Antitrust Division
    United States Department of Justice


_____        October 12, 2006
KENNETH KEITT                          as of October 9, 2006

JONES DAY

By: _____        October 12 2006
    Peter J. Romatowski
    Jones Day                          as of October 9, 2006
    51 Louisiana Avenue, N.W.
    Washington, D.C. 20001-2113



**U.S. Department of Justice**

Antitrust Division

*City Center Building*
*1401 H Street, NW*
*Washington, DC 20530*

December 21, 2006

<u>HAND DELIVERED</u>

Peter J. Romatowski
Jones Day
51 Louisiana Avenue NW
Washington, D.C. 20001

    Re:    <u>Tolling Agreement b/t the Antitrust Division and Kenneth Keitt</u>

Dear Peter:

    Thank you for your thoughtful presentation during our meeting on December 19, 2006. At the end of your presentation, we discussed extending the expiration date included in paragraph 1 of the Tolling Agreement between the Antitrust Division and Kenneth Keitt dated October, 2006 ("Tolling Agreement"). By this letter, we request that, as permitted by paragraph 4 of the Tolling Agreement, you and Kenneth Keitt agree to amend paragraph 1 of the Tolling Agreement to toll the statute of limitations through and including <u>February 28, 2007</u> ("Amendment").

    This Amendment would modify paragraph I of the Tolling Agreement as follows:

    1.    As to any federal civil or criminal charge, violation, offense, claim or proceeding for which the statute of limitations would otherwise expire during the period October 9, 2006 through February 28, 2007 (a "Tolled Charge"), the running of the statute of limitations is hereby tolled through and including February 28, 2001. Accordingly, should any Tolled Charge be brought by the Antitrust Division, Kenneth Keitt hereby waives and shall not assert as to any Tolled Charge in any manner the defense of statute of limitations, the doctrines of waiver, laches, or estoppel, or any other matter constituting an avoidance of a Tolled Charge that is based on the failure to commence a Tolled Charge during the period October 9, 2006 through February 28, 2007.

With the exception of this agreed-upon Amendment, all other provisions in the Tolling Agreement will remain in full force and effect.



**EXHIBIT**

3

12/21/2006 10:07 FAX                                                    ☒003

Please acknowledge your agreement and that of your client to the above-referenced Amendment by executing the signature lines below and returning an original, signed page to me. We have executed this agreement on behalf of the Antitrust Division.

Sincerely yours,

John Terzaken
Trial Attorney
National Criminal Enforcement Section

## AGREEMENT TO AMEND TOLLING AGREEMENT

I, the undersigned, agree to the above-referenced Amendment to the Tolling Agreement between the Antitrust Division and Kenneth Keitt dated October, 2006.

ANTITRUST DIVISION
U.S. DEPARTMENT OF JUSTICE

By: _____          12/21/06
Lisa M. Phelan                        DATE
Chief, National Criminal Enforcement Section
Antitrust Division, U.S. Department of Justice

KENNETH KEITT

_____          12/21/06
Kenneth Keitt                     DATE

_____          12/21/06
Peter J. Romatowski               DATE
Jones Day
*Counsel for Kenneth Keitt*