IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No.  07-041 (RJL) |
| | ) | |
| KENNETH KEITT | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT KENNETH KEITT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS FIRST MOTION TO COMPEL EXCULPATORY INFORMATION**

Defendant Kenneth Keitt, by and through his undersigned counsel, respectfully submits the following reply to the government's response to his first motion to compel exculpatory information.

The prosecutors assert that Mr. Keitt's *Brady* motion is not ripe because "such claims may only be assessed after conviction…." Document No. 44, at 1.  The Honorable Paul L. Friedman has recently made clear that this is not so; "[t]here simply is a need for the Justice Department to change the mindset of its trial prosecutors to assure that its approach to *Brady* is broad and open, 'consistent with the special role of the American prosecutor in the search for truth in criminal trials.'" *United States v. Safavian,* 233 F.R.D. 205, 207 (D.D.C. 2006)(citations omitted). "The prosecutor cannot be permitted to look at the case pretrial through the end of the telescope an appellate court would use post-trial." *United States v. Safavian,* 233 F.R.D. 12, 16 (D.D.C. 2006).  Prosecutors must always provide "any potentially exculpatory or other favorable evidence without regard to how the withholding of such evidence might be viewed - with the benefit of hindsight – as affecting the outcome of the trial." *Id.*  The government, therefore, cannot credibly argue that Mr. Keitt's *Brady* motion is not ripe.

The government goes on to claim, notwithstanding their ripeness argument, that it has met its disclosure obligations in this case. Document No. 44, at 2. The prosecutors then evade the issues raised by Mr. Keitt in his motion for exculpatory information. The prosecutors do not deny that Mr. DerMinassian told them that Mr. Keitt's former company legitimately purchased two vehicles pursuant to a contract and not as a personal favor to him. *See* Exhibit 1. The prosecutors do not deny that, pursuant to this contract, Mr. Keitt's former company was required to "…maintain [these vehicles] in good repair…." *See* Exhibit 2. Finally, the prosecutors do not deny that Mr. DerMinassian swore under oath that he illegally "solicited and accepted $10,544.99 in vehicle repair services." *See* Exhibit 3.

Instead, the prosecutors claim, without explanation, that this information is "not exculpatory." Document No. 44, at 3. On the contrary, this is powerful impeachment evidence and it must be identified and disclosed as *Brady* material. *See Safavian*, 233 F.R.D. 12, 15-16 (*Brady* information is any evidence that "tends to help the defense by either bolstering the defense case or **impeaching potential prosecution witnesses**.")(emphasis added); *United States v. Hsia,* 24 F.Supp.2d 14, 29 (D.D.C. 1998)("To the extent that the government knows of any documents or statements that constitute *Brady* material, it must identify that material…."). If Mr. DerMinassian swore he was guilty of conduct that was not criminal, then Mr. Keitt is entitled to know this. The government cannot continue to remain vague on this point.

Finally, the prosecutors cite no case to support its contention that their notes are exempt from disclosure under *Brady*. *Compare United States v. Harrison,* 524 F.2d 421, 429 (D.C. Cir. 1975). The prosecutors do not deny that no report was created following the September 19, 2006 interview of Mr. DerMinassian -- during which he apparently admitted to providing false information regarding the purchase of vehicles by Mr. Keitt's former company. Given this, Mr.

Keitt is entitled to learn the identities of all persons who were present during Mr. DerMinassian's September 19, 2006 interview, and he is entitled to all notes of that interview.

For the reasons given in this reply and those given in the memorandum in support of defendant's motion for exculpatory information, Mr. Keitt respectfully requests that the Court grant his *Brady* motion.

Respectfully submitted,

_____/s/_____
STEVEN J. McCOOL
D.C. Bar No. 429369
MALLON & McCOOL, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Kenneth Keitt

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of December 2007, the foregoing Defendant's Reply to the Government's Response to His First Motion to Compel Exculpatory Evidence was served by electronic filing upon:

John Terzaken
Mark Pletcher
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C. 20530


_____/s/_____
STEVEN J. McCOOL



**U.S. Department of Justice**

Antitrust Division

*City Center Building*
*1401 H Street, NW, Suite 3700*
*Washington, DC 20530*

March 27, 2007

<u>VIA E-MAIL (W/O ATTACHMENTS) & FEDERAL EXPRESS</u>

Steven J. McCool
Mallon & McCool, LLC
1776 K Street, N.W., Suite 200
Washington, D.C. 20006
smccool@mallonandmccool.com

    Re:    <u>United States v. Kenneth Keitt</u>, Criminal No. 07-041 (RJL) (D.D.C.)

Dear Mr. McCool:

    In compliance with Federal Rules of Criminal Procedure 16 and 26.2, 18 U.S.C. § 3500, and *Brady* v. Maryland, 373 U.S. 83 (1963), United *States* v. *Giglio*, 405 U.S. 150 (1972), and their progeny, the United States hereby makes the following disclosures to you as counsel for Kenneth Keitt ("Defendant"):

1. The United States has no written or recorded statements made by Defendant. (Fed.R.Crim.P. 16(a)(1)(A) and (B)).

2. The United States has located no criminal record for Defendant. If that information turns out to be incorrect, we will forward a copy of the record as soon as we receive it. (Fed.R.Crim.P. 16(a)(1)(D)).

3. The United States will peimit Defendant to inspect and copy or photograph all hard-copy materials required by Fed.R.Crim.P. 16(a)(1)(E). To make an appointment to do so, contact John Terzaken at 202-307-0719 or Mark Pletcher at 202-307-6186. Moreover, for your convenience, enclosed (Attachment A) is a listing of the evidence, identified by box number, bates range (if available), company source and custodian (if available). The identifying information is for record-keeping purposes only and has no evidentiary significance.

4. Enclosed (Attachment B) are computer disks containing all of the electronic materials required by Fed.R.Crim.P. 16(a)(1)(E). If you have any problems loading or reviewing these materials, please contact John Terzaken at 202-307-0719 or Mark Pletcher at 202-307-6186.

5. The United States has no results or reports of any physical or mental examinations, or of scientific tests or experiments made in connection with this case. (Fed.R.Crim.P. 16(a)(1)(F)). Further, the United States has no present intention of offering any testimony during its case-in-chief under Rules 702, 703 or 705 of the Federal Rules of Evidence. (Fed.R.Crim.P. 16(a)(1)(G)).

6. Pursuant to Fed.R.Crim.P. 16 and 26.2, 18 U.S.C. $3500, and *Brady* v. Maryland, 373 U.S. 83 (1963), United States v. *Giglio*, 405 U.S. 150 (1972) and their progeny, the United States encloses herewith (Attachment C) copies of all of the grand jury transcripts, grand jury exhibits, and interview memoranda in this case. Further, the United States discloses that Mr. DerMinassian was interviewed on September 19, 2006. In the interview, Mr. DerMinassian stated that, in 2002, DMJM+Harris, Inc., purchased two, high-end sport utility vehicles for use by the Traffic Services Administration pursuant to requirements of the Operational Support Contract, D.C. Formal Agreement No. 014-98, and not as a favor to Mr. DerMinassian.

4. The United States expects to use several summary charts at trial pursuant to Fed. R. Evid. 1006. We will ensure that you have these charts in advance of trial and we will identify the underlying documents and their admissibility.

8. The United States may introduce business records pursuant to Fed. R. Evid. 902(11). We will promptly share with you any 902(11) declarations we may receive, as well as file formal notice of these declarations with the court.

Pursuant to Fed.R.Crim.P 12(d)(2), please be advised that the United States reserves the right to use all of the evidence disclosed in its case-in-chief at trial. Further, we are aware of our continuing obligation to promptly disclose additional evidence or material and will comply with that obligation. Finally, the materials enclosed herewith are being produced pursuant to our understanding that the use of these materials will be handled in accordance with an agreed upon protective order, which was filed with the Court on March 24, 2007.

Pursuant to Federal Rule of Criminal Procedure 16(b), the United States hereby requests reciprocal discovery from Defendant. (Fed.R.Crim.P 16(b)(1)(A)(B) and (C)).

Sincerely,

John Terzaken
Mark Pletcher
National Criminal Enforcement Section

2

D. C. FORMAL AGREEMENT NO. **014-98**

THIS AGREEMENT, consisting of sixteen (16) pages; Attachment A, Employee Classifications and Hourly Billing Rates; Attachment B, General Provisions; Attachment C, Key Personnel; Attachment D, Reimbursable Costs; and Attachment E, Certifications; made and entered into this _____SEP 1 5 2000_____ day of _____ and between the DISTRICT OF COLUMBIA, a municipal corporation, hereinafter called "District", and FREDERIC R. HARRIS, INC., hereinafter called "Consultant", whose address is 1707 H Street, N.W., Suite 200, Washington, D.C. 20006.

WITNESSETH:

WHEREAS, the District of Columbia Department of Public Works, hereinafter called "DPW", desires to proceed with traffic system operational support for the District of Columbia Transportation Management System; and

WHEREAS, DPW has determined that it must engage the services of a Consultant to assist its Bureau of Traffic Services in providing the required operational support in the form of personnel, vehicles, and field and office equipment; and

WHEREAS, the Federal Highway Administration of the United States Department of Transportation, hereinafter called "FHWA", has agreed to participate in the cost of such engineering services when performed in conjunction with federal-aid projects, or considered to be eligible for federal-aid Construction funds.

NOW, THEREFORE, the parties hereto, for the consideration hereinafter set forth, mutually agree as follows:

EXHIBIT 4

| Description | Quantity |
|---|---|
| - Enclosure, mount, pole | 6 |
| - Field electronics | 6 |
| - Line receiver | 6 |
| - 'Switches | 1 |
| - Monitor | 4 |
| - T/L video recorder | 1 |
| - Equipment cabinet | 1 |
| ■ Development Panels | 2 |
| - 170E controller | 2 |
| - Fully loaded equipment cabinet | 2 |
| • Display Panels | 2 |
| - LED outputs | |
| - Full input File Switch Complement | |
| ■ Load Panels | 2 |
| - 100 watt lamps | |
| - 18x3 channels | |
| ■ Cable and Panels | 1 |
| - 100 pair cable T/P | |
| - 50 pair cable T/P | |
| - 25 pair cable T/P | |
| - 12 pair cable T/P | |
| - 12 pair fiber | |
| - 48 pair fiber | |
| - CAT 5 T/P-4 pair | |
| - RG 6 coax | |

Sec. 5. Transportation. The Consultant ~ball supply eight (8) vehicles to support communications and field equipment maintenance and traffic engineering investigations. The fleet of vehicles shall include five (5) fully quipped general purpose service vehicles, two (2) bucket trucks, and one (1) lift truck. The lift truck and bucket trucks shall be delivered with a full complement of equipment to support the program. The Consultant shall purchase or lease the vehicles at the commencement of the contract. One or more of the vehicles shall be made available for use by District personnel at the request of TSSD. The Consultant shall maintain each vehicle in good repair and fully operational condition for the full extent of the agreement. Vehicles shall be replaced as necessary in order to maintain reliable operation. The Consultant shall be responsible for fuel, maintenance and insurance costs for the duration of the agreement. All vehicles shall be insured by the Consultant to cover usage by TSSD employees.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * * | Criminal No.: **CR 05-127** |
| v. | * * | Filed: |
| WILHELM DERMINASSIAN | * * * | Violations: 18 U.S.C. § 201(c)(1)(B) 18 U.S.C. §§ 1343, 1346 |

********

# INFORMATION

The United States of America, acting through its attorneys, charges:

COLLYER, J. RMC
A

I.

APR 11 2005

**Count One (18 U.S.C. §§ 1343, 3346)**

General Allegations

1. From approximately August 2000 through April 2003 Wilhelm DerMinassian ("Defendant") served as the Associate Director in charge of the Traffic Services Administration, a division of the District of Columbia's Department of Transportation (hereinafter collectively referred to as the "D.C. D.O.T.").

2. At all times relevant to this Information Company A, not named as a defendant herein, provided traffic engineering services to the D.C. D.O.T. under its $12.9 million Operational Support contract.

3. At all times relevant to this Information Person A-1, not named as a defendant herein, was a Project Manager for Company A and was in charge of the day-to-day operations of the Operational Support contract, and Person A-2, not named as a defendant herein, was a Vice-President for Company A with supervisory authority over Person A-1 and the Operational Support contract.

Case Related To CR 05-128

EXHIBIT 2

4. **At all times relevant** to **this Information the** Defendant, in **his capacity as** the **Associate** Director **of the** D.C. D.O.T., **was responsible** for **the administration** and oversight of the Operational **Support** contract.

<u>The Scheme to Defraud</u>

5. From **approximately** October **2001** through **April** 2003, **in the** District of Columbia and elsewhere, the **Defendant,** together with Company **A, through Persons A-1 and A-2,** did **unlawfully and knowingly devise and participate** in **a scheme and artifice to deprive the District of** Columbia **and its citizens of their intangible** right to his honest services as a public official, and to have those services performed free from deceit, favoritism, bias, conflict of interest and self-enrichment.

<u>Overview of the Scheme</u>

6. It **was part** of the scheme that from **approximately October 2001 through** October **2002 the** Defendant solicited and accepted approximately $20,000 in cash and other items of value from Company A, through Persons A-1 and A-2, in connection with the Operational Support contract, including:

   A.   on or about October 2, 2001 the Defendant solicited and accepted $2,500 in cash;

   B.   on or about October 26, 2001 the Defendant solicited and accepted $4,400 in cash;

   C.   on or about April 34 2002 the Defendant solicited and accepted $300 in cash; and

   D.   on or about September 27, 2002 the Defendant solicited and accepted $10,544.99 in vehicle repair services.

7. It **was further part** of **the** scheme that the **Defendant** concealed **his receipt of** the cash end other items of value detailed in Paragraph 6 by, among other things, insisting in several instances

-2-

on receiving payments in cash.

8. It was further part of the scheme that the Defendant solicited and accepted the cash and other items of value detailed in Paragraph 6 with the intent to be influenced to favor Company A in his oversight and administration of the Operational Support contract, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

9. It was further part of the scheme that from approximately October 2001 through April 2003 the Defendant had an undisclosed and improper conflict of interest in that he failed to report his receipt of the cash and other items of value detailed in Paragraph 6, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

10. It was further part of the scheme that between approximately October 2001 and April 2003 the Defendant, having been influenced by the cash and other items of value detailed in Paragraph 6, took official actions in connection with the Operational Support contract that benefitted the financial interests of Company A, including the recommendation and approval of additional work through non-competitive change orders to the Operational Support contract, thus depriving the District of Columbia and its citizens of their intangible right to his honest services as a public official.

11. It was further part of the scheme that between approximately October 2001 and April 2003 the Defendant, having been influenced by the receipt of the cash and other items of value detailed in Paragraph 6, and having failed to disclose the conflict of interest arising therefrom, recommended and approved three separate change orders to the Operational Support contract worth a total of $5,655,871.

12. It was further part of the scheme that from approximately October 2001 through April

-3-

2003 the Defendant intentionally deceived the District of Columbia and its citizens into believing that his official acts in connection with the Operational Support contract were free from the taint of favoritism, bias, conflict of interest and self-enrichment, when in fact he did have an undisclosed conflict of interest and had been influenced by his receipt of the cash and other items of value detailed in Paragraph 6.

### Use of the Interstate Wires in Furtherance of the Scheme

13.     For the purpose of executing the scheme and artifice to defraud detailed in Paragraph 5, on or about October 22, 2001 the Defendant caused Person A-1, who was in his office in Washington, D.C., to telephone Person A-3, who was in Annapolis, Maryland, which resulted in Person A-3 withdrawing cash from a bank account, $4,400 of which Person A-1 later gave to the Defendant on or about October 26, 2001, such use of the interstate wires being foreseeable to the Defendant.

## II.

### Count Two (18 U.S.C. § 201(c)(1)(B))

#### General Allegations

1. Paragraph 1 of Count One of this Information is realleged and incorporated by reference as though filly set forth herein.

2. At all times relevant to this Information Company B, not named as a defendant herein, provided traffic engineering services to the D.C.D.O.T. under its $17.5 million Integrated Traffic Management System ("I.T.M.S.") contract.

3. At all times relevant to this Information Persons B-1 and B-2, neither of whom is named as a defendant herein, were principals, officers and owners of Company B with supervisory authority for its performance of the I.T.M.S. contract.

4. At all times relevant to this Information the Defendant, in his capacity as the Associate Director of the D.C. D.O.T., was responsible for the administration and oversight of the I.T.M.S. contract.

#### Description of the Offense

5. On or about October 18, 2002 the Defendant sought to have Company B, though Person B-2, provide him with an item of personal value, to wit, to pay a $1,348.91 hotel bill on the Defendant's behalf, thus enabling the Defendant to make personal use of, and benefit from, a monetary travel advance previously issued to him by the District of Columbia.

6. On or about October 18, 2002 Company B, through Person B-2 after consultation with Person B-1, paid the Defendant's hotel bill detailed in Paragraph 5.

7. The Defendant's acceptance of the item of personal value detailed in Paragraphs 5 and 6

-5-

05/03/2005  08:33    2026284177            CQBLIRNANDSCHERTLER                    PAGE   07/25

was not provided for by law for the proper discharge of the Defendant's official duty.

8.  The Defendant, a public official, sought and accepted the item of personal value detailed in Paragraphs 5 and 6 for an official act to be performed by the Defendant, to wit, favorable treatment of Company B by the Defendant in his future administration and oversight of the I.T.M.S. contract.

III.

Jurisdiction and Venue

The offenses charged in this Information were carried out in the District of Columbia within the five years preceding the filing of this Information.

IN VIOLATION OF TITLE 18 UNITED STATES CODE, SECTIONS 201, 1343 AND 1346.

DATED: April 11, 2005

R. Hewitt Pate /DAH
R. HEWITT PATE
Assistant Attorney General

SCOTT D. HAMMOND
Deputy Assistant Attorney General

MARC SIEGEL
Director of Criminal Enforcement

LISA M. PHELAN
Chief, National Criminal
Enforcement Section

Antitrust Division
United States Department of Justice

PETER H. GOLDBERG
Attorney, Antitrust Division
United States Department of Justice
1401 H Street, NW, Suite 3700
Washington, D.C. 20530
Tel: (202) 307-5784

JOHN SCHMOLL
Attorney, Antitrust Division
United States Department of Justin
1401 H Street, NW, Suite 3700
Washington, D.C. 20530
Tel: (202) 307-5780

-7-