**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **Criminal No. 07-041 (RJL)** |
| **v.** ) | |
| ) | |
| **KENNETH KEITT,** ) | |
| ) | |
| **Defendant.** ) | |

**REVISED PROPOSED JURY INSTRUCTIONS OF THE
UNITED STATES AND MEMORANDUM IN SUPPORT THEREOF**

On April 28, 2008, the United States and Defendant filed their proposed jury instructions. Document Nos. 63 and 68 (dated April 28, 2008). On May 1, 2008, at the pre-trial conference for this matter, the Court discussed the proposed jury instructions with the parties and asked the parties to submit revised instructions regarding the statutory language for, and elements of, a gratuity offense. Accordingly, the United States, by and through undersigned counsel, hereby respectfully submits revised instructions, as well as a memorandum in support of these revised instructions.

**I.     REVISED PROPOSED JURY INSTRUCTIONS**

In addition to standard "Red Book" instructions listed by name and number in the Proposed Jury Instructions of the United States (Document No. 63), the United States respectfully requests that the Court give the following "offense-specific" instructions:

## **STATUTORY LANGUAGE**

Section 201(c) of Title 18 of the United States Code provides, in part, that:

"Whoever – otherwise than as provided by law for the proper discharge of official duty – directly or indirectly gives . . . anything of value to any public official . . . for or because of any official act performed or to be performed by such public official" shall be guilty of an offense against the United States.

Authority

*See Federal Jury Practice and Instructions*, O'Malley-Grenig-Lee, § 27.02.

## **ELEMENTS OF THE OFFENSE**

The defendant is charged in the Indictment with giving an illegal gratuity to a public official in violation of 18 U.S.C. § 201(c)(1)(A).

For you to find the defendant guilty of that charge, you must be convinced that the government has proved each of the following three elements beyond a reasonable doubt:

**First**, you must find that Wilhelm DerMinassian was a public official.

A public official is an officer or employee or person acting for or on behalf of the United States, including the District of Columbia, in any official function.

**Second**, you must find that the defendant directly or indirectly gave something of value to a public official.

Something of value includes things possessing intrinsic value; it does not have to be money. Something of value can include extending a loan with favorable terms, or forgiving an obligation to repay money previously extended.

You must also find that the defendant's act of giving something of value was not authorized by law for the proper discharge of the public official's duties. That is, you must find that the thing of value was not part of the public official's salary or other lawful compensation.

**Third**, you must find that the defendant gave the thing of value for or because of an official act that had been performed or was to be performed by the public official.

An official act is any decision or action on any matter, which may at any time be pending before the public official. A public official does an "official act" when he or she makes any decision whose answer or disposition is determined by the government. The official acts charged in this case are those decisions pending or to be pending related to the operational support contract.

You must find that the thing of value was given for or because of those official acts. Something given "for or because of" could be a reward for past acts performed related to a contract; an enticement for future action with respect to a contract; or could simply be given in the hope that when issues surrounding a contract came before a government agency for consideration and decision, that the responsible public official would listen hard to, and hopefully be swayed by, the defendant's proposals, suggestions, and/or concerns.

The thing of value need not have been given only for or because of the official acts, because people rarely act for a single purpose. Rather, activity is more typically multi-causal and directed toward achieving several ends, rather than a single one. So, to find that the thing of value was given for or because of the official acts, you must find that the gift was in large part motivated by or substantially associated with the official acts charged in this case. In making this determination, you, the jury, may use specific

statements and contemporaneous documentation to determine the defendant's motivation for giving the things of value, but you may also determine the defendant's motivation on the basis of the circumstances surrounding the defendant's actions.

Authority

*See Federal Jury Practice and Instructions*, O'Malley-Grenig-Lee, §§ 27.03, 27.07, 27.08, 27.10; *United States v. Sun-Diamond Growers*, 536 U.S. 398 (1999); *United States v. Valdes*, 475 F.3d 1319 (D.C. Cir. 2007); *United States v. Bucheit*, 134 Fed. Appx. 842 (6th Cir. 2005); *United States v. Schaffer*, 183 F.3d 833 (D.C. Cir. 1999) (overruled by presidential pardon).

## **STATUTE OF LIMITATIONS**

The illegal gratuity charged in this case must have been given within five years of the date of Indictment, plus any period of tolling agreed upon by the government and the defendant. In this case, the defendant and the government have agreed that the tolling period began on October 9, 2006. For you to find the defendant guilty of the crime charged, you must therefore find that the defendant gave the thing of value—in this case, forgiving any obligation to repay the $6,900—to the public official on or after October 9, 2001.

## II.  MEMORANDUM IN SUPPORT OF REVISED PROPOSED JURY INSTRUCTIONS

Due to the complexity of the law in this area, the United States submits that the jury will benefit greatly from clear, particularized instructions as proposed above. The jury should not make its grave decisions with confusion or doubt about how the applicable legal standards apply to this case.

### A.  The Court Should Instruct the Jury that Actions Pending or To Be Pending Related to the Operational Support Contract Are Official Acts

#### 1.  What Constitutes an "Official Act" Is a Question of Law

In determining the definition of "official act," the D.C. Circuit has indicated that the issue presents a question of law to be decided by the courts. *United States v. Valdes*, 475 F.3d 1319, 1324-25 (D.C. Cir. 2007) (finding, as a matter of law and despite the jury's guilty verdict, that the defendant's actions did not constitute "official acts" for purposes of 18 U.S.C. § 201(c)). Fundamental to the criminal justice system is the principle that judges rule on questions of law and juries are called upon to determine the facts. *United States v. Ellis*, 121 F.3d 908, 925 (4th Cir.1997) ("[I]t is the court that provides the legal yardstick and the jury that measures the evidence"); *see also United States v. Ayeni*, 374 F.3d 1313, 1317 (D.C. Cir. 2004) (Tatel, J., concurring) ("[J]uries do not serve as the 'triers of law.' They are not expected to divine the law for themselves the way they are expected to find the facts. Rather, the trial judge, aided by counsel, provides the jury with the proper legal standard."). The trial judge provides the jury with those

legal standards in the form of instructions which sufficiently explain the law. *Kelly v. South Carolina*, 534 U.S. 246, 256 (2002).

In this case, the jury must determine whether a gratuity was paid "for or because of" an official act by DerMinassian. The Court, on the other hand, must determine whether the acts charged by the United States, should the jury find them to be true, are "official acts" as defined in the statute.

2. DerMinassian's Actions Related to the Operational Support Contract Are "Official Acts"

An "official act" underpinning a gratuity is defined by statute as "any decision or action on any question, matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official . . . ." 18 U.S.C. § 201(a)(3). According to the District of Columbia Circuit, this means that official acts are "a class of questions or matters whose answer or disposition is determined by the government[,]" such as, "'Should this person receive a contract . . . , and for how much??'" *Valdes*, 475 F.3d at 1324, 1325. By contrast, the Court noted that "§ 201 is not about officials' moonlighting, or their misuse of government resources, or the two in combination." *Id*. Thus, a defendant's use of a government database to search for publicly-available factual information was found not to be an "official act" because it required no disposition or decision by the government. *Id*. at 1325.

An "official act" can also encompass a series of actions or decisions by a public official, related to one pending matter. In *United States v. Sun-Diamond Growers*, the

Supreme Court quoted the D.C. Circuit's opinion below: "That an official has an abundance of relevant matters on his plate should not insulate him or his benefactors from the gratuity statute—as long as the jury is required to find the requisite intent to reward past favorable acts or to make future ones more likely." 526 U.S. 398, 403-04 (1999) (quoting *United States v. Sun-Diamond Growers*, 138 F.3d 961, 969 (D.C. Cir. 1998)). In *United States v. Ahn*, a police officer's conviction for receiving gratuities was upheld where the payments the officer received were given to induce his past and continuing failure to report the massage parlors' illegal activity, thereby rewarding him for a course of conduct rather than any unitary official act (or failure to act). 231 F.3d 26, 33 (D.C. Cir. 2000); *see also United States v. Campbell*, 684 F.2d 141, 149-50 (D.C. Cir. 1982) (rejecting the "startling" claim that a judge's gratuity conviction, paid for or because of his leniency in administering traffic citations, should be overturned for failure to tie the gift to a specific instance of leniency).

In the present case, DerMinassian's "official acts" were related to the "matter" of the operational support contract, then pending before him. As the Associate Director with supervisory control over the operational support contract, DerMinassian had made, and was in a position to make, numerous governmental decisions that could either benefit or harm Defendant and DMJM's interests related to the operational support contract. For example, during the fall of 2001, DerMinassian played a key role in discussions between DMJM and the DC DOT regarding the DC DOT's decision to exercise option years on

the operational support contract. On September 28, 2001, just days before Defendant Keitt arranged to deliver cash to DerMinassian, the DC DOT did in fact exercise the first option year. DerMinassian also had supervisory authority over the DC DOT's task orders, as well as the ultimate authority to terminate the operational support contract.

DerMinassian also played a critical role in determining the District of Columbia's planning and expenditures for emergency services, which Defendant realized could be (and which later were) added by supplement to the existing operational support contract. In particular, in the immediate aftermath of September 11, 2001, DC DOT became aware it would be the recipient of a congressional grant to bolster emergency traffic services, largely through the installation of closed circuit televisions (CCTVs) to aid traffic flow. Defendant took steps to assure that this work was awarded to DMJM by, as Defendant stated in an email of September 24, 2001, "supplementing [DMJM's operational support] contract rather than [through] traditional procurement." Defendant's lobbying efforts on this score paid off: the DC DOT ultimately decided not to put out a competitive bid for the CCTV work and instead, awarded the CCTV work to DMJM in the form of a $3.5 million supplement to the operational support contract.

In short, DerMinassian's actions related to the operational support contract are quintessential "official acts," as described in *Valdes*. DerMinassian, like the hypothetical public official described in *Valdes*, was responsible for determining whether DMJM should receive a contract or benefit, and for how much. *Valdes*, 475 F.3d at 1325.

Defendant targeted DerMinassian for his lobbying efforts precisely because DerMinassian's position within the DC DOT—specifically, his administration and control over the operational support contract—allowed him to make decisions on behalf of the DC DOT that could greatly benefit DMJM. These decisions related to the operational support contract are, as a matter of law, "official acts" that fit squarely within the statutory definition and the jury should be so instructed.

### B. The Court Should Provide a Particularized Instruction to the Jury Regarding the Definition of "For or Because Of" An Official Act

The requirement that a gratuity is paid "for or because of" an official act provides the measure of criminal intent required to support a gratuity conviction. *Sun-Diamond*, 526 U.S. at 404, *United States v. Schaffer*, 183 F.3d 833, 843 (D.C. Cir. 1999) (overruled by presidential pardon). In *Sun-Diamond*, the Supreme Court held that, as the statutory text suggests, gift-giving merely by dint of an individual's official position does not provide sufficient criminal intent to support a violation of the gratuities statute. 526 U.S. at 404; *Schaffer*, 183 F.3d at 840 ("It is not a crime to give things of value to a public official merely to get cozy or in the hopes of inducing warm feelings toward the giver or the giver's employer."). The magnitude of the necessary link between the thing of value and the official act, left ambiguous in *Sun-Diamond*, was explored in *Schaffer*, where the D.C. Circuit observed that a gratuity "presumes a situation in which the offender gives the gift without attaching any strings." 183 F.3d at 841 (quoting *United States v. Mariano*, 983 F.2d 1150 (1st Cir. 1993)). That is, a thing of value given to a public official is a

gratuity even if the official act "might have been done without the gratuity." *Id*. (quoting *United States v. Brewster*, 506 F.2d 62, 72 (D.C. Cir. 1974)).

*Schaffer* also recognized the difficulties of proof of this nebulous conception of criminal intent. The court recognized that a defendant may have multiple motivations for giving the gift, not all of which must be invidious in order for a gratuity to be committed. *Id.* at 834. The Court took pains to point out that the measure of proof required to find intent must be grounded in the jury's common sense:

> [H]uman beings rarely act for a single purpose alone. Rather, activity is more typically multi-causal, and directed toward achieving several rather than a single end[s]. Accordingly, we . . . focus instead on the more realistic and probative question of whether the acts in question were substantially, or in large part motivated by the requisite intent to influence the [public official].

*Id*. The Court also acknowledged that "it may be near impossible to establish the requisite mens rea through direct evidence," and thus, in the absence of any specific statement or contemporaneous documentation of the defendant's subjective motivation, the trier of fact must "ascribe an intent on the basis of the circumstances surrounding the defendant's actions." *Id*.

The Court identified three possible permutations of a gratuity, noting that the distinct "for or because of" language in 18 U.S.C. § 201(c) means that gratuities can either look forward or backward. *Id.* at 841-42. A gratuity can be a reward for past action. It can also be intended to entice a public official who has already staked out a position favorable to the giver to maintain that position. *Id.* at 842. Finally, a gratuity can

be given with the intent to induce a public official to propose, take, or shy away from some future official act. *Id.* This third category would "additionally encompass gifts given in the hope that, when particular official actions move to the forefront, the public official will listen hard to, and hopefully be swayed by, the giver's proposals, suggestions, and/or concerns." *Id.*

Subsequently, in *Ahn*, the D.C. Circuit applied *Schaffer* to uphold the guilty plea of a police officer, Ahn, who received money from various massage parlors for or because of his failure to report their code violations. 231 F.3d at 33. Although the factual basis for Ahn's guilty plea did not explicitly link the payments to his failure to report violations, the Court held that "the only conclusion that can be drawn from the proffer is that while Lieutenant Ahn received payments . . . , the massage parlors continued to engage in illegal conduct and Ahn failed to take any 'immediate and proper police action.'" *Id.* at 32. *Ahn*, thus, provides a concrete example of the "common sense" approach to intent espoused in *Schaffer*. 183 F.3d at 843.

In this case, the jury will be presented with direct, contemporaneous evidence, as well as evidence of the surrounding circumstances, that Defendant had the requisite intent to give a thing of value to DerMinassian for or because of his official acts related to the operational support contract. The jury must be able to draw that conclusion even if Defendant was motivated only "substantially, or in large part" to give the gratuity for or because of these acts, and they must understand that their conclusion is properly based on

surrounding circumstances and their own common sense. Finally, the jury must be permitted to draw its conclusions in light of the specific circumstances of the operational support contract.

### C.  The Court Should Instruct the Jury Regarding the Statute of Limitations and the Tolling Agreement Between the Parties

On October 9, 2006, the parties entered into a Tolling Agreement, the language of which was drafted by counsel for Defendant. In that agreement, Defendant waived his right to raise "in any manner the defense of statute of limitations" with respect to the current charge "that is based on the failure to commence a Tolled Charge during the period October 9, 2006 through January 30, 2007." Defendant's Motion to Dismiss the Indictment as Barred by the Statue of Limitations at Ex. 2 (Document No. 24) (dated Nov. 2, 2007) ("SOL Motion") (attaching Tolling Agreement). That period was later extended to February 28, 2007. SOL Motion at Ex. 3 (attaching letter agreement). The grand jury returned its Indictment within this tolled period, on February 23, 2007.

The running of the statute of limitations is therefore straightforward and simple in this case. The five-year limitations period was extended from October 9, 2006, until the date of the Indictment. Thus, if the charged conduct took place on or after October 9, 2001—five years before the tolling period began—then the conduct is within the relevant statute of limitations. *See* 18 U.S.C. § 3282(a).

**D.     Conclusion**

For the foregoing reasons, the United States proposes that the Court give the proposed particular instructions pertaining to the offense charged in the Indictment. The United States respectfully re-asserts its request for leave to make any additional requests for specific jury instructions that may become necessary in the event of any presentation of defense evidence or otherwise.

DATED this 9th day of May, 2008.

Respectfully submitted,

\_\_\_\_\_/s/_____
EMILY W. ALLEN
JOHN F. TERZAKEN III (D.C. Bar # 474015)
MARK W. PLETCHER
Trial Attorneys, Antitrust Division
U.S. Department of Justice
450 5th Street, N.W., 11th Floor
Washington, D.C.  20530
Telephone: (202) 307-0946
Facsimile:   (202) 514-6525
E-mail:  john.terzaken@usdoj.gov
          mark.pletcher@usdoj.gov
          emily.allen@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of May 2008, the foregoing REVISED PROPOSED JURY INSTRUCTIONS OF THE UNITED STATES, was filed electronically and to the best of my knowledge, information and belief, counsel for defendant Kenneth Keitt will be notified through the Electronic Case Filing System.

                                            /s/
                                    EMILY W. ALLEN
                                    Trial Attorney, Antitrust Division
                                    U.S. Department of Justice
                                    450 5th Street, N.W., 11th Floor
                                    Washington, D.C. 20530
                                    Telephone: (202) 307-0946
                                    Facsimile: (202) 514-6525
                                    E-mail: emily.allen@usdoj.gov