## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | **Criminal No. 07-041 (RJL)** |
| **v.** | ) | |
| | ) | |
| **KENNETH KEITT,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### RESPONSE OF THE UNITED STATES TO DEFENDANT'S
### SECOND MOTION TO DISMISS INDICTMENT ON
### <u>STATUTE OF LIMITATIONS GROUNDS</u>

The Indictment charges that from in October 2001 until in or about December 2001, defendant gave a $6900 gratuity to Wilhelm DerMinassian.  The evidence will prove that this charge involves a course of conduct whereby defendant asked his bosses whether he could give money to DerMinassian and was told no; defendant gave DerMinassian money anyway in the form of two payments totaling $6900; and when questions arose as to whether DerMinasian was required to pay that money back, defendant assured DerMinassian that the money was his to keep.  The government, perhaps inartfully, has been using shorthand to describe this course of conduct as a "loan forgiveness theory" because the conduct ended with defendant's act of reassuring DerMinassian that he had no obligation to repay the $6900.  Regardless of the nomenclature used to describe the theory of the case, however, the critical fact remains that defendant's course of conduct in giving DerMinassian $6900 is properly charged in the Indictment as a single gratuity count and, thus, that count is neither duplicitous nor

barred by the applicable statute of limitations.  Accordingly, defendant's Supplemental

Motion to Dismiss the Indictment on Statute of Limitations Grounds (Document No. 95)

(dated May 19, 2008) should be denied.

If the Court were to determine that the two payments made to DerMinassian as

part of defendant's course of conduct should have instead been pled by the United

States as two separate gratuity counts and, thus, that the Indictment was duplicitous,

such a determination would not be fatal.  The Court could remedy any such duplicity

problem by requiring the government to elect on which of the two payments it wanted to

proceed forward and then by alleviating any residual confusion through an appropriate

curative jury instruction.

## I.    STATEMENT OF FACTS

In this case, the parties agreed to toll the statute of limitations for the period

beginning on October 9, 2006, through the filing of the Indictment.  Thus, the statute of

limitations is met if the charged conduct occurred on or after October 9, 2001.

On February 23, 2007, a Grand Jury empaneled in the District of Columbia

charged defendant with one count of providing an illegal gratuity to the former Associate

Director of the Traffic Services Administration ("TSA") of the District of Columbia

Department of Transportation ("DC DOT"), Wilhelm DerMinassian, who is referred to

in the Indictment as Person A, in violation of 18 U.S.C. § 201(c)(1).  The Indictment

charged that from in October 2001 until in or about December 2001, defendant gave a

$6900 gratuity to DerMinassian for or because of official acts performed or to be performed by DerMinassian related to the operational support contract held by defendant's company, DMJM + Harris, Inc.

On November 2, 2007, defendant filed motions seeking to dismiss the Indictment on grounds that the charged conduct was duplicitous and barred by the statute of limitations.  *See* Defendant's Motion to Dismiss the Indictment as Barred by the Statute of Limitations (Document No. 24) (dated Nov. 2, 2007); Defendant's Motion to Dismiss the Indictment as Duplicitous (Document No. 25) (dated Nov. 2, 2007).  On May 1, 2008, the Court denied both motions.

On May 19, 2008, following a pretrial conference with the Court, defendant filed the present Supplemental Motion to Dismiss the Indictment on Statute of Limitations Grounds (Document No. 95) (filed May 19, 2008) ("Motion to Dismiss").

## II.     THE INDICTMENT PROPERLY PLEADS A COURSE OF CONDUCT AND THUS IT IS NEITHER DUPLICITOUS NOR BARRED BY THE STATUTE OF LIMITATIONS

The United States will prove that defendant engaged in giving a series of illegal gratuities Wilhelm DerMinassian in the fall of 2001.  The Indictment, therefore, appropriately charged the defendant with a single count of making an illegal gratuity in violation of 18 U.S.C. § 201(c).

A series of acts can be charged in a single count of an indictment if they are so closely connected that they represent a "continuing course of conduct."  *United States v.*

*Shorter*, 608 F. Supp 871, 875 (D.D.C. 1985); *see also United States v. Mangeiri*, 694

F.2d 1270, 1282 (D.C. Cir. 1982).  Whether a series of acts can be charged as a course

of conduct is a fact-specific inquiry.  In conducting such inquiries, courts have

considered, among other factors, whether the series of acts have the same criminal

purpose or scheme, involve the same actors, and are sufficiently temporally linked to

one another.  When these factors are present, courts have approved indictments pleading

a course of conduct as a single count even when the underlying crimes can be otherwise

made and completed in a single act.  *See, e.g.*, *United States v. Watt*, 911 F. Supp. 538,

552 (D.D.C. 1995) (false statements); *United States v. North*, 708 F. Supp. 372, 374

(D.D.C. 1988) (obstruction of justice); *Shorter*, 608 F. Supp. at 878 (tax evasion).

Importantly, courts have had no trouble concluding that illegal gratuities may properly be

charged and proven as a course of conduct, even when the government could

conceivably charge several gratuity counts based on the same conduct.  *See United*

*States v. Bucheit*, 134 Fed. Appx. 842 (6th Cir. 2005); *United States v. Bustamonte*, 45

F.3d 933, 942 (5th Cir. 1995).

    In *United States v. Bustamante*, the Fifth Circuit analyzed a course of illegal

gratuity conduct that occurred "over an extended period of time."  45 F.3d 933, 942 (5th

Cir. 1995).  Bustamante was convicted of accepting an illegal gratuity based on his

acceptance of a risk-free investment in a fledgling company and a loan guaranty to

purchase stock.  *Id.* at 940.  He challenged his conviction on statute of limitation

grounds, arguing that he accepted the gratuity eight years before the indictment issued. *Id.* at 942. The Fifth Circuit denied this challenge, upholding the single count that charged Bustamante "with accepting illegal gratuities over an extended period of time," beginning outside of the limitations period. The limitations period did not disturb the conviction because Bustamante was "charged with continuing criminal behavior." *Id.*

Similarly, in *United States v. Bucheit*, the Sixth Circuit concluded that a single gratuity count can encompass a series of acts. 134 Fed. Appx. 842, 845 (6th Cir. 2005) (unpublished). Bucheit provided home repairs to a Congressman's father, then sent the Congressman a bill for nearly $30,000. *Id.* at 845. Nine years later, an indictment was returned charging Bucheit with making an illegal gratuity for failing to collect on that debt. *Id.* at 852. The court rejected Bucheit's claim that the limitations period had run, allowing the indictment to stand because Bucheit's collection forbearances continued over an extended period of time, "each in exchange for a different official act" by the Congressman. *Id.* at 852-53. Notwithstanding its conclusion that "the Government could conceivably have charged several gratuity counts based on the official acts and corresponding agreement of forbearance," the court found that the single charge was perfectly appropriate under a course of conduct theory. *Id.* at 853.

The Ninth Circuit came to the same conclusion in the closely related bribery context in *United States v. Morales*. 11 F.3d 915, 918 (9th Cir. 1993). *Morales* examined a defendant's ex post facto objection to his sentence following a conviction on

one count of bribery that encompassed numerous payments from various sources. *Id.* at 917. The court concluded that there was no ex post facto problem even though some of the charged bribery conduct, which was all contained in one count in the indictment, occurred prior to an amendment to the sentencing guidelines. *Id.* at 918. As the Sixth Circuit held in *Bucheit*, the acts could be contained in a single bribery count even though the "government probably could have divided the scheme into multiple counts." *Id.* at 918.

The Indictment in this case properly charges in a single count a series of closely connected acts resulting in defendant giving a $6900 gratuity to Wilhelm DerMinassian. Specifically, the United States will prove at trial that in the fall of 2001, defendant had only one critical piece of business pending before DerMinassian: the operational support contract. DerMinassian sat in judgment over decisions relating to that contract, including decisions relating to the administration and oversight of the contract, renewal of the contract, termination of the contract, and consideration of proposals, suggestions, and solicitations for new work. Importantly, in the wake of the September 11, 2001, terrorist attacks, DerMinassian also held the keys to a potential opportunity for defendant to get new emergency support services work from the District worth up to $100,000,000. Defendant wanted DerMinassian to help him to obtain that new business as an add-on to the existing operational support contract, rather than having to compete for that business through the traditional competitive procurement process.

With all of this business pending before him, DerMinassian asked defendant for money, and defendant delivered. Defendant first asked his superiors, Robert Edelstein and Ira Levy, whether he could provide money or loans to DerMinassian and defendant was flatly told by both men that he could not. Nonetheless, the evidence will show that defendant ignored his superiors, and on or about October 2 and October 26, 2001, defendant, through his subordinate Travers, provided $6,900 in cash to DerMinassian. Defendant accomplished this by leading Travers to believe that this money was a loan from Travers and/or DMJM to DerMinassian to cover travel expenses.

After Travers "loaned" the $6,900 to DerMinassian, Travers approached DerMinassian on several occasions seeking to recover that money. To make sure there was no ambiguity that the money was his free and clear, DerMinassian spoke to defendant and asked him to repay Travers. Defendant then told Travers that if he wanted his money back, his only option was to submit a phony expense report, based on phony receipts, to the company.

As in *Bucheit* and *Bustamonte*, the series of acts taken by defendant all had the same criminal purpose or scheme, involved the same actors, and are sufficiently temporally linked to one another. That is, defendant committed all of these acts for or because of DerMinassian's control over the operational support contract; involved a common scheme and the same three actors – defendant directing Travers to pay cash to DerMinassian under the mistaken belief that Travers was "loaning" money to

DerMinassian; defendant's series of acts resulted in DerMinassian keeping the $6900

with no obligation to repay it; and all of defendant's acts took place in the critical time

period of the fall of 2001.  On these facts, there is no question that defendant gave

DerMinassian $6,900 for or because of his official acts related to the operational

support contract, as pled in the Indictment.

To be clear, the United States does not suggest that on these facts this course of

illegal gratuity conduct is a "continuing offense" within the meaning of *United States v.*

*Toussie*, 397 U.S. 112 (1970).  "Continuing offense" is concept different from "course

of conduct, used to describe criminal offenses made up of a single crime with continuing

effects.  *United States v. Hare*, 618 F.2d 1085, 1086 (4th Cir. 1980) (finding

impermissible continuing offense theory based on perpetual loan forbearance).  The

"continuing offense" doctrine "comes into play where it is contended that the actual

conduct of the defendant ended but the crime continued past that time."  *Morales*, 11

F.3d at 918 (distinguishing "continuing effects" from a course of criminal behavior).  In

*Toussie*, for example, the government argued that the failure of an 18-year-old man to

register for the draft was a "continuing offense" in that, after the crime was completed,

"it continued to be committed each day that Toussie did not register."  397 U.S. at 114.

The Supreme Court rejected that argument and reversed the conviction for violation of

the statute of limitations.  *Id.* at 124 (holding that a "continuing offense" may be charged

only where either (1) "the explicit language of the substantive criminal statute compels"

that it be construed as such or (2) "the nature of the crime is such that Congress must assuredly have intended that it be treated as a continuing one").  The "continuing offense" doctrine is "wholly inapposite," however, where the United States does not suggest that "defendant's offense continued beyond the time that he stopped seeking and receiving the illegal fruits of his . . . scheme." *Morales*, 11 F.3d at 918; *see also Bucheit*, 134 Fed. Appx. at 853 ("Defendant is not alleged to have committed a single crime which had continuing effects."); *Bustamante*, 45 F.3d at 942 ("Bustamante is not accused of committing a crime that has continuing effects after its completion.").

Defendant nevertheless relies on the "continuing offense" doctrine to argue that the Indictment was barred by the statute of limitations.  Motion at 2.  But defendant's crime did not "continue to be committed" each day that he did not seek repayment from DerMinassian, *Toussie*, 397 U.S. at 114, and Defendant is not accused of committing a crime with continuing effects after its completion.  *Bustamante*, 45 F.3d at 942.  Rather, as in *Bustamante* and *Bucheit,* the defendant was charged with a course of illegal gratuity conduct from October 2001 to December 2001 for or because of the operational support contract and the promise it held for up to $100,000,000 in additional add-on business.

Indeed, on facts very similar to those in this case, the Sixth Circuit repudiated the defendant's reliance on the continuing offense theory: "[T]his would be a good argument if . . . the Government was arguing the statute of limitations was tolled every day [the

public official] enjoyed the benefit of [the gratuity] without having to make a payment or accrue any interest." *Bucheit*, 134 Fed. Appx. at 853.

Those, of course, are not the facts in this case. As pleaded in the Indictment, the course of the illegal gratuity conduct was completed in the fall of 2001, when defendant absolved DerMinassian of any obligation to repay Travers. Defendant's illegal gratuity payments were, therefore, not a "continuing offense," lingering into the future; rather, the defendant's conduct in the fall of 2001 represented a course of illegal conduct, encompassing his inquiries to his DMJM superiors, the two cash payments made to Wilhelm Derminassian, and defendant's subsequent conversations with both DerMinassian and Travers where he ensured that DerMinassian could keep the money free and clear from all seekers. This course of conduct, as pleaded, was circumscribed in time, with a deliberate modus operandi, and wholly related to the same official acts related to the operational support contract and its promise of additional business in the wake of the terrorist attacks of September 11. For these reasons, the course of conduct pled in the Indictment sufficiently announces one, unitary act of giving an illegal gratuity, and thus defendant's motion should be denied.

## III.   THE COURT CAN REMEDY A DUPLICITOUS INDICTMENT

Should the Court nevertheless find that the Indictment is duplicitous, the remedy need not be dismissal without prejudice. Instead, the United States may correct a duplicitous indictment by electing on which charge it wishes to continue. *Franklin v.*

*United States*, 330 F.2d 205, 207 (D.C. Cir. 1963) (acknowledging election between duplicitous rape counts as a remedy); *see also United States v. Ramirez- Martinez*, 273 F.3d 903, 915 (9th Cir. 2001) (holding duplicity "not fatal because the government can elect between the charges prior to submission to the jury"); *United States v. Hood*, 210 F.3d 660, 663 (6th Cir. 2000) (asserting as remedy to duplicity violation that the government may "elect either the count or the charge within the count upon which it will rely"); Wright & Miller, *Federal Practice and Procedure: Criminal* § 145 at n.4 (2d ed. 1982) (collecting cases). If any ambiguity persists after the government has elected how to proceed, the court may cure any residual confusion with an appropriately crafted jury instruction. *United States v. Savoires*, 430 F.3d 376, 380 (6th Cir. 2005) (holding "proper jury instructions can mitigate the risk of jury confusion and alleviate the doubt that would otherwise exist as to whether all members of the jury had found the defendant guilty of the same offense"); *Hood*, 210 F.3d at 663 (holding the court may particularize the distinct offense charged in each count in its jury instruction); *United States v. W.R. Grace*, 429 F. Supp. 1207, 1219 (D. Mont. 2006) ("Another option is to address the duplicitous indictment by instructing the jury that all members are required to agree as to which of the distinct charges the defendant actually committed."); Wright and Miller, § 145 at n.5.

In this case, if the Court finds that the Indictment does not properly charge gratuities given for the same purpose over an illegal course of conduct, but rather that

the Indictment impermissibly charges in one offense what should have been charged as two separate, distinct gratuity payments, then the United States will elect to proceed to prove the $4400 gratuity payment to Wilhelm Derminassian on or about October 26, 2001.  To alleviate any confusion as to the jury's verdict, the Court should give a curative instruction, alerting the jury that only the $4400 gratuity payment is at issue, notwithstanding the Indictment's mention of both payments aggregated as $6900.  Such an instruction will be easily grasped by the jury, and thereby remedy any possibility that the jury would convict on the other $2500 payment made three weeks earlier.[1]

DATED this 21st day of May, 2008.

Respectfully submitted,

_____/s/_____
JOHN F. TERZAKEN III (D.C. Bar # 474015)
MARK W. PLETCHER
EMILY W. ALLEN
Trial Attorneys, Antitrust Division
U.S. Department of Justice
450 5th Street, N.W., 11th Floor
Washington, D.C.  20530
Telephone: (202) 307-0719
Facsimile:   (202) 514-6525
E-mail:  john.terzaken@usdoj.gov
              mark.pletcher@usdoj.gov
              emily.allen@usdoj.gov

---

[1]    While superseding the Indictment is a possible remedy as well, *see* 18 U.S.C. § 3289, in this case, that remedy is unnecessary and would be unduly burdensome.

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of May 2008, the foregoing RESPONSE OF

THE UNITED STATES TO DEFENDANT'S SECOND MOTION TO DISMISS

INDICTMENT ON STATUTE OF LIMITATIONS GROUNDS, was filed

electronically and to the best of my knowledge, information and belief, counsel for

defendant Kenneth Keitt will be notified through the Electronic Case Filing System.


_____/s/_____
JOHN F. TERZAKEN III (D.C. Bar # 474015)
Trial Attorney, Antitrust Division
U.S. Department of Justice
450 5th Street, N.W., 11th Floor
Washington, D.C.  20530
Telephone:  (202) 307-0719
Facsimile:   (202) 514-6525
E-mail: john.terzaken@usdoj.gov