IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    )
)
)
    v.                    )         Criminal No.  07-041 (RJL)
)
)
KENNETH KEITT          )
)
    Defendant.          )

DEFENDANT'S BENCH MEMORANDUM REGARDING INTRODUCTION
OF EVIDENCE RELATED TO A GOVERNMENT WITNESS' DRUG USE

This Honorable Court requested that the parties meet and confer regarding issues that may arise during Wilhelm DerMinassian's examination.   The Government has indicated its belief that Wilhelm DerMinassian's drug abuse is legitimate and thus should not come into evidence.   This position is completely contradicted by the facts, the Government's previous stance on this issue, and the case law in this circuit.

Wilhelm DerMinassian, the Government's main witness and the alleged recipient of the gratuity charged in this case, has a long and very well documented history of drug abuse and addiction.   In his sentencing memorandum, dated September 29, 2005, Mr. DerMinassian sought to minimize his conduct by indicating that he had been struggling with "substance abuse issues for a number of years."   *See* DerMinassian Sentencing Memorandum (Exhibit 1) at 7.   Mr. DerMinassian further indicated that, as a result of his addiction, he had been attending weekly Narcotics Anonymous meetings.  *Id.*   In support of his argument that he should receive a lesser sentence as a result of his drug abuse, Mr. DerMinassian provided a report from Dr. Richard Ratner.   This report which has been discussed at length in open Court, reveals that Mr. DerMinassian had a "15-year history

of opiate abuse", had procured "narcotic painkillers both legally and illegally", and had used a "huge variety of them." *See* Ratner Report (Exhibit 2) at 1. Mr. DerMinassian was clearly under the influence of opiates during the October, 2001 to December 2001 timeframe covered by the Indictment.

The Government raised no objection to Mr. DerMinassian relying on his drug abuse at sentencing. Further, the Federal Bureau of Prisons (BOP), which is a division of the Department of Justice, allowed Mr. DerMinassian to take part in its Residential Drug Abuse Program (RDAP). In order to be eligible for RDAP an inmate must have a verifiable drug abuse problem. *See* BOP Program Statement 5330.10(5.4.1(a)(1))(Exhibit 3). Mr. DerMinassian's RDAP records indicate that, as of January 19, 2006, he had been using opiates almost every day for 20 years. Based upon his participation in RDAP the BOP approved an 11 month reduction in Mr. DerMinassian's sentence.

The Department of Justice has acknowledged that Mr. DerMinassian was abusing drugs. It is irrelevant whether or not the genesis of that drug abuse may have been legitimate pain issues from a 20 year old car accident.

Further, it is well settled law that is proper to explore a witness's drug use to determine his capacity to observe, remember and recall. *See United States v. Kearney*, 420 F.2d 170, 174 (D.C. Cir. 1969)(holding in general it is undeniable that it may be proper to develop the matter of drug addiction in an effort to attack a witness' competency and capacity to observe, remember and recall); *United States v. Sampol*, 636 F.2d 621, 666 (D.C. Cir. 1980)(recognizing the propriety of cross examining a witness on drug abuse to determine his ability and capacity to observe the events in question);

*United States v. Leonard,* 494 F.2d. 955, 971 (D.C. Cir. 1974); *United States v. Fowler*, 465 F.2d 664, 668 (D.C. Cir. 1972).

At a hearing in this matter, the Court questioned if the drugs which Mr. DerMinassian was using were of the same nature as the drugs being used in the cases addressing the issue in this circuit. Mr. DerMinassian was diagnosed as being dependent on opiates. Opiates and their derivatives are narcotic drugs. 21 U.S.C. § 802(17)(A). The cases addressing the issue in this circuit do not focus on the types of drug being used. They focus instead on the effect of that drug use. The purpose of exploring the issue of a witness' drug use is to determine the effect that that drug use has on the witness capacity to observe, remember and recall. *See Kearney*, at 174.

However, to the extent the cases do reference the types of drug being used, the types of drugs are narcotics, just like the drugs Mr. DerMinassian was using. *See e.g. Sampol*, at 666 (holding the narcotics addiction of a witness is relevant to his capacity to observe); *Fowler*, at 668 (holding it was improper to block all probing of an issue like narcotics use by the prosecutions sole eyewitness to a murder).

Wherefore, for all of the aforementioned reasons, Mr. Keitt respectfully requests that he be permitted to introduce evidence related to Wilhelm DerMinassian's drug use.

Respectfully submitted,


_____/s/_____
DANIEL T. MCNAMARA
D.C. Bar No. 494834
MALLON & McCOOL, LLC
1776 K Street, N.W.
Suite 200
Washington, D.C. 20006
(202) 393-7088

Counsel for Kenneth Keitt

CERTIFICATE OF SERVICE

I hereby certify that on the 27th day of May 2008, the foregoing Bench Memorandum Regarding the Introduction of Evidence Related to a Government Witness' Drug Use with Incorporated Memorandum of Points and Authorities and attached proposed Order were served by electronic filing upon:

John Terzaken
Mark Pletcher
Emily Allen
U.S. Department of Justice
Antitrust Division
1401 H Street, N.W., Suite 3700
Washington, D.C.  20530


_____/s/_____
DANIEL T. MCNAMARA

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Docket Number 1:05-cr-127** |
| | ) | **Hon. Rosemary M. Collyer** |
| | ) | **Sentencing September 30, 2005** |
| WILHELM DERMINASSIAN, | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

## DEFENDANT'S MEMORANDUM IN AID OF SENTENCING

The Defendant, Wilhelm Derminassian ("Derminassian"), by undersigned counsel, and in accordance with Rule 32 of the Federal Rules of Criminal Procedure, respectfully submits this Memorandum in Aid of Sentencing. The purpose of this Memorandum is to bring to the Court's attention a number of factors relevant to the determination of his appropriate sentence under the provisions of Title 18 United States Code § 3553(a) and the United States Sentencing Guidelines ("USSG" or "Guidelines"). This Memorandum sets forth our position on the relevant facts and the law, as well as Mr. Derminassian's cooperation with the United States, in order to aid this Court in determining an appropriate sentence for Mr. Derminassian.

## I.    BACKGROUND

Mr. Derminassian comes before this Court having pled guilty to one count of wire fraud in violation of 18 U.S.C. §§ 1343 and 1346, and one count of receiving an illegal gratuity in violation of 18 U.S.C. § 201(c)(1)(B). Mr. Derminassian's improper conduct occurred while Mr. Derminassian was the Associate Director in charge of the Traffic Services Administration of the District of Columbia Department of Transportation ("DCDOT"). As this Court knows, Mr. Derminassian waived indictment and agreed to cooperate with the United States Government in its ongoing investigation of fraud within DCDOT.



EXHIBIT

1

Given the limited scope and duration of Mr. Derminassian's improper conduct, the minimal harm that was caused by his acceptance of the improper monies and the substantial period of incarceration that has been proposed, there is no need for the Court to be concerned about any sentencing disparity. On the contrary, using the Guidelines calculation determined by the parties, as well as the Guidelines calculation proposed in the PSI, it is clear that Mr. Derminassian's proposed sentence is within the applicable range and is certainly a reasonable sentence.

**D.    THE GUIDELINES CALCULATION**

It is respectfully requested that the Court determine Mr. Derminassian's Guidelines as follows:

| | | |
|---|---|---|
| Base Offense Level | 14 | |
| Abuse of a Position of Trust | +4 | |
| Role in the Offense | +2 | |
| Adjusted Offense Level | 20 | |
| Acceptance of Responsibility | -3 | |
| Total Offense Level | 17 | Criminal History 1[1] |

At a total offense level of twenty (20), Mr. Derminassian's guideline range for incarceration is between twenty-four (24) and thirty (30) months. This puts the agreed upon thirty (30) month sentence within the recommended guideline range.

**E.    SUBSTANCE ABUSE**

As was explained in detail in the PSI, Mr. Derminassian has been struggling with substance abuses issues for a number of years. Mr. Derminassian has dealt with problems involving alcohol and prescription pain medications for a number of years without treatment or

7

support. It was only when the instant offense came to light and Mr. Derminassian sought

psychiatric treatment that he began to receive appropriate substance abuse treatment. Now, after

years of abuse, Mr. Derminassian has started on the road to recovery.

Having become addicted to prescription pain medications a number of years ago, Mr.

Derminassian has used prescription pain medications and alcohol to deal with undiagnosed

depression. Since he began his counseling, and with the help of United States Probation Officer

Theresa Grant, Mr. Derminassian has been involved in substance abuse counseling and treatment

with Dr. Richard Ratner, M.D., as well as a participating in weekly counseling with the

Psychiatric Institute of Washington in their Sunday morning Narcotics Anonymous ("NA")

sessions.[2]

While his substance abuse problems had gone untreated for years, he is now finally

getting the issue under control. Mr. Derminassian is seeing Dr. Ratner, taking medications to

deal with his anxiety disorder and depression, as well as working on dealing with his substance

abuse issues. Coupled with his weekly NA meetings, the treatment is having a tremendous

positive impact on Mr. Derminassian.

It is requested that the Court allow Mr. Derminassian to continue with his individual

counseling and group therapy by recommending that he be designated to the Federal Prison

Camp at Cumberland (Maryland) with a recommendation that he participate in the Residential

Drug Abuse Program ("RDAP").

---

[1] This is Mr. Derminassian's first and only contact with the criminal justice system.
[2] Officer Grant met with Mr. Derminassian to prepare his PSI. During that meeting, in the presence of counsel, Officer Grant was able to obtain a significant history of substance abuse from Mr. Derminassian. It was a very important event and it was Officer Grant's intervention and insistence that he do so that compelled Mr. Derminassian to beginning his involvement with NA/AA. Officer Grant's personal attention to Mr. Derminassian was above and beyond her duties and was greatly appreciated by Mr. Derminassian and his family.

## CONCLUSION

For the reasons set forth above, Mr. Derminassian respectfully requests the Court impose a sentence that is consistent with the statutory framework of 18 U.S.C. § 3553(a), the now advisory Guidelines, and under the terms proposed by the parties in the plea agreement under Fed. R. Crim. P. 11(c)(1)(C). Although having shown a terrible and significant lapse in judgment through his acceptance of payments by contractors, Mr. Derminassian is a good person who has lived a very honest, forthright, and respectful life. For all the reasons set forth above, we respectfully submit that the proposed sentence of incarceration, combined with the agreed upon restitution and fines is warranted in this case.

Respectfully Submitted,

**SCHERTLER & ONORATO, L.L.P.**


_____/s/_____
David Schertler (DC Bar Number 367203)
Mark E. Schamel (DC Bar Number 463965)
Schertler & Onorato, LLP
1140 Connecticut Avenue, NW
Suite 1140
Washington, D.C.  20036
Telephone:  (202) 628-4199
Facsimile:  (202) 628-4177

9

# RICHARD A. RATNER, M.D., P.A.
PSYCHIATRY

Suite 303
5028 Wisconsin Avenue, N.W.
Washington, D.C. 20016
(202) 686-2200
Fax: (202) 686-2208
Email: raratner@raratner.com

September 29, 2005

Mark Schamel, Esq.
David Schertler, Esq.
Schertler & Onorato
1140 Connecticut Avenue, N.W.
Suite 1140
Washington, D.C. 20036

<u>Re: Wilhelm Derminassian, DOB: 2-25-51</u>

Dear Messrs Schamel and Schertler:

At the request and with the permission of my patient and your client, Wilhelm Derminassian, I am writing to summarize Mr. Derminassian's condition and my psychiatric diagnoses.

As you know, Mr. Derminassian is a 54 year old married Armenian American traffic engineer who is about to be sentenced in U. S. District Court after entering a plea to charges of illegally accepting gratuities during his tenure as associate director of the DC Department of Transportation. At your suggestion, Mr. Derminassian first consulted me on April 14, 2005, and I have been treating him since that time. His last visit to my office was yesterday, September 28.

Mr. Derminassian has a complicated psychiatric history. He has been receiving medication for psychiatric problems since approximately 1988 when he recalls having a panic attack and thinking he was about to die. He was treated by his primary care physician with Xanax. Soon thereafter he discovered he was hypertensive, and because he has "always been a worrier", he found himself using Xanax in gradually larger doses more or less regularly since that time.

In 1989 and again in 1991, he experienced a series of car accidents, in each of which he hurt his back and neck. He was treated with painkillers, initially Tylenol #3 and then with gradually stronger medications including Percocet and Oxycontin. This began his nearly 15-year history of opiate abuse that has continued to the present time. Over the years Mr. Derminassian has procured narcotic painkillers both legally and illegally and has used a huge variety of them. These have included Oxycontin, Percocet, Vicodin, and Darvocet. He also developed a serious tendency to alcohol abuse over the years, and he could recall at least one time in the mid nineties when friends had to "bring me home and

Distinguished Life Fellow of the American Psychiatric Association

**EXHIBIT**

2

Mark Schamel, Esq.
David Schertler, Esq.
Re: Wilhelm Derminassian
September 29, 2005
Page 2 of 3

throw me in bed." Despite these problems, he functioned at a high level and was at one time influential in the DC Department of Transportation.

After his more or less forced retirement in April 2003 he found a time limited consultancy, but this ended in November of that year. With no other work and with a criminal investigation ongoing, he became increasingly despondent. In about April 2004 he "accidentally" overdosed and was admitted to Shady Grove Hospital in Gaithersburg, MD. He recalls that while he did not set out to commit suicide, he would have been very happy not to wake up.

At some point he was started on antidepressant medications but was not seen by a psychiatrist until he came to my office.

Mr. Derminassian has a number of ongoing medical problems including hypertension, gout, high cholesterol, hypothyroidism, hemorrhoids, gastric reflux, and chronic back and neck pain, probably secondary to traumatic arthritis. For these conditions, he takes a variety of medications that should simply be continued if and when he is incarcerated.

I have seen Mr. Derminassian on approximately ten occasions since April. Through those sessions I have concluded that Mr. Derminassian suffers from two separate categories of psychiatric diagnosis: a mood disorder and a substance abuse disorder. The most likely mood diagnosis is of a Major Depressive Disorder, recurrent, with considerable amounts of anxiety. As to his substance abuse, he meets criteria for Opioid Dependence (304.00[1]) because he would experience withdrawal if he were to stop these drugs acutely. He also qualifies for Alcohol Abuse (305.00) having very likely been alcohol dependent in the past, and he may also be dependent physiologically upon his anxiolytic medication (Xanax).

When he came to me he was being treated with Wellbutrin and Paxil, antidepressants, and substantial amounts of Xanax, an anxiety medication. He was also using a potpourri of opiate medications as well, though he had gotten himself to stop drinking regularly by that time.

I have adjusted these medications and recently added another, Seroquel, to help him manage his overwhelming anxiety as his sentencing date approaches. In addition, I have offered him support and have suggested that it is imperative that he become enrolled in a program for the treatment of substance abuse.

If Mr. Derminassian is able to remain free, I have directed him to my colleague, George Kolodner, MD, of the Kolodner Clinic, which specializes in the treatment of alcohol and

---

[1] according to the Diagnostic and Statistical Manual, Fourth Edition, of the American Psychiatric Association, Washington, DC, 1994

Mark Schamel, Esq.
David Schertler, Esq.
Re: Wilhelm Derminassian
September 29, 2005
Page 3 of 3

substance abuse. While Mr. Derminassian had managed to cut back some on his daily load of opiates as of early July, his anxiety since then has completely washed away his resolve. I am convinced that Mr. Derminassian will require an inpatient detox phase as the initial portion of a treatment plan designed to deal effectively with his long-term and ongoing substance abuse.

If Mr. Derminassian should be sentenced to incarceration, it is my strong recommendation that he be placed in a substance abuse program within the confines of the institution to which he is sent. This gentleman is certainly as prime a candidate for such a program as any I have seen in recent memory, and I think the prognosis is guardedly optimistic. Though a long-term user, Mr. Derminassian has never been given the benefit of a full-scale detox and rehabilitation program and therefore has never failed any such program. His age, high level of functioning and obvious intelligence should also contribute to the better than average prognosis.

I hope this letter is helpful to Mr. Derminassian and to the Court in crafting its disposition of your client. Please contact me if further information is required.

Sincerely yours,

Richard A. Ratner, MD, DLFAPA



**U.S. Department of Justice**
Federal Bureau of Prisons

# Change
# Notice

**DIRECTIVE BEING CHANGED:** 5330.10
**CHANGE NOTICE NUMBER:** CN-03
**DATE:** October 9, 1997

1. <u>PURPOSE AND SCOPE</u>. To transmit chapter changes to PS 5330.10, Drug Abuse Programs Manual, Inmate.

2. <u>SUMMARY OF CHANGES</u>. This Change Notice modifies rules language related to the instant offense and provisional § 3621(e) criteria, and clarifies language regarding prior offenses. Attachments J and K were revised to include language that follows the new Program Statement on Categorization of Offenses.

Attachment N was developed to include a standardized format to obtain instant offense determinations from unit teams. Also, DAP staff must submit relevant documentation to legal staff when there is uncertainty over whether a prior offense would preclude an inmate from receiving a sentence reduction.

Other minor clarifications and corrections to this policy were included.

3. <u>DIRECTIVE REFERENCED</u>

    PS 5162.04    Categorization of Offenses (10/09/97)

4. <u>TABLE OF CHANGES</u>

| Remove | Insert |
|---|---|
| Table of Contents | Table of Contents |
| Chapter 5, Pages 5 and 6 | Chapter 5, Pages 5 - 6A |
| Chapter 6 | Chapter 6 |
| Chapter 7, Pages 3 and 4 | Chapter 7, Pages 3 and 4 |
| Chapter 9, Pages 5 and 6 | Chapter 9, Pages 5 and 6 |
| Chapter 9, Pages 13 and 14 | Chapter 9, Pages 13 - 15 |
| Attachments H, J, K, M | Attachments H, J, K, M |
|  | Attachments N and O |

**EXHIBIT**

3

P.S. 5330.10
CN-01, May 17, 1996
Chapter 5, Page 3

All inmates living on the unit must be:

- participating in the program,
- waiting to begin participating in the program, or
- waiting to transfer out of the unit for reasons of
completion, expulsion, or withdrawal.

When space is available, inmates who have completed the unit-based component of the program may remain on the unit while in institutional transitional services.                                    *

5.3.2  <u>Treatment Phases</u>.  The Residential Treatment Program Handbook, (Volumes 1-5), specifies the required phases of treatment, the content of treatment modules, and required treatment services for at least 450 of the 500 required hours of programming.  The treatment regimen outlined in the Handbook is based on current research and practice in drug abuse treatment and is consistent with the Bureau's philosophy of treatment discussed above.  Optional programming offered should be consistent with and supportive of the goals, objectives, and substantive content of the Handbook.

*       5.3.3  <u>Assessment</u>.  All inmates applying for admission to residential treatment after October 31, 1994 must be interviewed using the <u>Residential Drug Abuse Program Eligibility Interview</u> prior to program acceptance.  Drug abuse treatment staff at residential programs will also use the <u>Residential Drug Abuse Treatment Planning Interview</u> as the foundation for treatment planning prior to the inmate's completion of the Orientation Phase of treatment (see 5.3.4 below).                                    *

5.3.4  <u>Treatment Plans</u>.  A treatment plan must be completed on each inmate participant prior to completion of the Orientation Phase of treatment.

5.3.5  <u>Incentive Program</u>.  All residential treatment programs must offer an incentive program to enhance inmate participation in treatment (see Section 5.5 below for further discussion).

5.4  <u>Program Procedures</u>.

5.4.1  **[a.  <u>Eligibility</u>. An inmate must meet all the following criteria to be eligible for the residential drug abuse treatment program.**

**(1)  The inmate must have a verifiable documented drug abuse problem.]**  Drug abuse program staff shall determine if the inmate has a substance abuse disorder by first conducting the
*       <u>Residential Drug Abuse Program Eligibility Interview</u> followed by a review of all pertinent documents in the inmate's central file to corroborate self-reported information.  The inmate must meet the diagnostic criteria for substance abuse or dependence