IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) Criminal No. 07-041 (RJL) |
| v. | ) |
| | ) |
| KENNETH KEITT, | ) |
| | ) |
| Defendant. | ) |

### RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION REGARDING THE INTRODUCTION OF EVIDENCE RELATED TO A WITNESS'S DRUG USE

The United States, by and through undersigned counsel, respectfully opposes defendant's Motion Regarding Introduction of Evidence Related to a Witness's Drug Use ("Motion on Drug Use") (Document 100) (filed May 21, 2008). There is no evidence in the record that on the specific dates in question Wilhelm DerMinassian was using prescription medication, nor has defendant offered a medically sustainable link between any particular prescribed medication and its adverse effect on perceiving and recalling events. Absent a foundation as to both the witness's use of drugs and the impact of those drugs, especially given the inflammatory nature of this subject matter, defendant's Motion on Drug Use should be denied.

### DISCUSSION

In cases involving witnesses abusing illegal narcotics, such as cocaine and heroin, the very possession of which constitutes a criminal offense, a trial judge must act with sensitivity because of the highly inflammatory nature of such a charge and the possibility

that exploration of a witness's addiction will generate unwarranted prejudice.[1] *United States v. Sampol*, 636 F.2d 621, 666 (D.C. Cir. 1980) (sustaining ruling disallowing drug use evidence). That prejudice results if the questions asked generate hostility based on the general odium of narcotics use. *United States v. Kearney*, 420 F.2d 170 (D.C. Cir. 1970). Cognizant of this risk of prejudice, in cases involving the use of hardcore illegal narcotics, "[t]his circuit has recognized the propriety of developing the matter of drug addiction for the purpose of attacking, not the addict's general credibility, but his ability and capacity to observe the events in question." *United States v. Leonard*, 494 F.2d 955, 971 (D.C. Cir. 1974) (affirming district court's restricting cross-examination after defendants failed to establish foundation that witness used heroin the day of the events in question); *United States v. Fowler,* 465 F.2d 664, 665 (D.C. Cir. 1972) (holding defendant had right to inquire whether witness was using illegal narcotics "at the time he observed [defendant] commit the alleged offenses"); *Kearney*, 420 F.2d at 174 (deferring cross-examination pending proper foundation that witness used narcotics on the day of the events).[2]

---

[1] Defendant inaptly cites to *Wilson v. United States*, 232 U.S. 563 (1914), which is a case about a defendant who took the stand to testify in her own defense. On cross-examination the defendant confirmed that she had taken morphine <u>that morning</u>, and thus was under the influence of drugs during her testimony. The trial court allowed this line of cross-examination as to the witness's current ability to recall the events, and the Supreme Court affirmed.

[2] Defendant also erroneously directs this Court to *Fletcher v. United States*, 158 F.2d 321, 323 (D.C. Cir. 1947), for the "holding" that a drug addict is inherently a perjurer. The holding of the case, instead, is that a defendant is entitled to an instruction that "an informer's testimony should be examined . . . with greater scrutiny and care than the testimony of an

In cases where a defendant can lay a proper foundation that the witness was under the influence of cocaine or heroin while observing the events in question, cross-examination in this regard may be proper, within the discretion of the trial court, because of those drugs' known effect on the ability to observe the events and remember them. The United States, however, has unearthed no case in the Federal Register, nor has defendant cited to any, where a court has permitted impeachment of a witness based on the witness's use of prescription pain medication. That result is unsurprising, given the millions of Americans who use prescription pain medication without detrimental effect, every day, year after year, to treat chronic pain.

A brief canvass of the peer-reviewed literature available at www.pubmed.gov, a database compiled by the National Institutes of Health, reinforces this conclusion. The literature largely confirms that prescription doses of pain medications, like oxycodone, produce no statistically significant effect on cognition (like driving a car), Verster J.C., et al., *Effects of an Opioid (oxycodone/paracetamol) and an NSAID (bromfenac) on Driving Ability, Memory Functioning, Psychomotor Performance, Pupil Size, and Mood*, 25 Clin. J. Pain 499-504 (2006), nor any adverse effect on memory, particularly in men, Friswell, J., et al., *Acute Effects of Opioids on Memory Function in Healthy Men and Women*, 198

---

ordinary witness." To the extent the Court commented in dicta on the general credibility of heroin addicts, that view has since been repudiated in *Leonard* and *Kearney* in favor of the view that credibility is dependent on the ability to observe the events in question. Consistent with *Kearney* and *Leonard*, *United States v. Butler*, 481 F.2d 531, 533-35 (D.C. Cir. 1973), also cited by the defendant, stands for the proposition that witnesses who used heroin on the day of the crime may, in the sound discretion of the trial court, be examined for competency to testify.

Psychopharmacology 243-50 (2008) (finding no working or episodic memory effect in healthy men given standard opioid dose). One study even indicates that acute oral doses of lorazepam may enhance retrograde memory. Pomara, N., et al., *Dose-dependent Retrograde Facilitation of Verbal Memory in Healthy Elderly after Acute Oral Lorazepam Administration*, 185 Psychopharmacology 487-94 (2006). While admittedly far from conclusive, this preliminary review of the medical research clearly indicates that the perception and recollection of a witness using prescription pain medication is not properly analogized to that of a witness lying in a stupor after injecting cocaine or heroin.

Therefore, given the nature of "drug use" allegations in this case, the Court should tack the conservative course suggested in *Leonard* and *Kearney*, as it considers whether or to what extent to allow cross-examination based on a witness's possible use of prescription medication. Consistent with Circuit precedent, the Court should require two foundational prerequisites before allowing any cross-examination as to the witness's drug use: (1) reliable evidence that the witness used the drug in question on the specific day of the events in question; and (2) reliable evidence, through expert testimony or otherwise, that the drug used by the witness was used in such a quantity or in such a manner as to impair the witness's ability to observe events.[3] By requiring these foundational

---

[3] The proffered opinion of Mr. DerMinassian that his use of these drugs has contributed to his inability to remember certain events is insufficient to meet this foundational prerequisite. Mr. DerMinassian has no medical training, nor any way to evaluate the issue. Mr. DerMinassian may testify that he cannot remember particular details about events that transpired almost seven years ago, and he may be cross-examined about his lack of memory of those events, but his attribution as to why he cannot remember is irrelevant on these particular facts.

prerequisites, the Court would be following the D.C. Circuit's guidance by striking the appropriate balance between allowing relevant cross-examination to test the witness's ability to recall the events in question and disallowing prejudicial and inflammatory cross-examination which seeks to taint the witness through the general odium of drug abuse.

In this case, the current evidentiary record fails to substantiate either foundational prerequisite.[4] No evidence suggests that Wilhelm DerMinassian used any particular prescription medication on October 2 (the date he asked for $2500 from the defendant); on October 22 (the date he asked for $5000 from the defendant); or on the dates thereafter when he and Mike Travers and he and the defendant resolved the outstanding issues regarding the money.[5] Nor certainly is there any evidence to suggest that if Mr. DerMinassian used prescription medication on the days of the events in question that used more than the prescribed amount or used it in such a way as to impair his ability to perceive events or to form memories of those events. Absent these minimum

---

[4] Although quoted frequently by the defendant, the Ratner Report provides no support for either foundational prerequisite. The Ratner Report is silent on Mr. DerMinassian's use of prescription pain medication in 2001, noting that it was not until sometime <u>after April 2003</u>, with a criminal investigation pending, that Mr. DerMinassian "became increasingly despondent." Nor does Dr. Ratner anywhere link Mr. DerMinassian's prescription drug use with any disability in perceiving events as they occurred or in remembering events.

[5] Defendant has elsewhere suggested that Mr. DerMinassian's drug use at or around the time of his grand jury appearance in 2005 was somehow relevant. In this case, Mr. DerMinassian will testify about the events at issue in the Fall 2001, and thus, his grand jury testimony and the circumstances surrounding its taking become relevant only if it is introduced by the government as a prior consistent statement. Fed. R. Evid. 801(d)(1)(B). If the grand jury testimony is not relied upon by the United States, the circumstances of such testimony are not in issue. Defendant may, of course, cross-examine the witness using the grand jury transcript to the extent his trial testimony is inconsistent therewith. Fed. R. Evid. 801(d)(1)(A).

foundational requirements, any cross-examination about Mr. DerMinassian's "drug use" devolves into impermissible impeachment based on social transgression.

## CONCLUSION

For the foregoing reasons, defendant's Motion on Drug Use should be denied.

DATED this 27th day of May, 2008.

                            Respectfully submitted,

                            _____/s/_____
                            JOHN F. TERZAKEN III (D.C. Bar # 474015)
                            MARK W. PLETCHER
                            EMILY W. ALLEN
                            Trial Attorneys, Antitrust Division
                            U.S. Department of Justice
                            450 5th Street, N.W., 11th Floor
                            Washington, D.C.  20530
                            Telephone: (202) 307-0719
                            Facsimile:   (202) 514-6525
                            E-mail:  john.terzaken@usdoj.gov
                                      mark.pletcher@usdoj.gov
                                      emily.allen@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of May 2008, the foregoing RESPONSE OF THE UNITED STATES TO DEFENDANT'S MOTION ON DRUG USE was filed electronically and to the best of my knowledge, information and belief, counsel for defendant Kenneth Keitt will be notified through the Electronic Case Filing System.

 /s/
EMILY W. ALLEN
Trial Attorney, Antitrust Division
U.S. Department of Justice
450 5th Street, N.W., 11th Floor
Washington, D.C.  20530
Telephone:  (202) 307-0946
Facsimile:  (202) 514-6525
E-mail: emily.allen@usdoj.gov